[No. A103586. First Dist., Div. Three. June 15, 2004.]

In re HENRY V., a Person Coming Under the Juvenile Court Law.
SAN MATEO COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v.
KARLA C., Defendant and Appellant.

**COUNSEL**

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas F. Casey III, County Counsel, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.—** ■ The fundamental right to the care and custody of one's child is protected by Constitution and statute. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76 [23 Cal.Rptr.2d 775, 859 P.2d 1290]; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 169–170 [5 Cal.Rptr.2d 450].) A child may not be taken from a parent's physical custody during juvenile dependency proceedings, except for a temporary detention period, unless clear and convincing evidence supports a ground for removal specified by the Legislature. Removal on any ground not involving parental rejection, abandonment, or institutionalization requires a finding that there are no reasonable means of protecting the child without depriving the parent of custody. (Welf. & Inst. Code § 361, subd. (c);[1] see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)

■ These basic guidelines establish that out-of-home placement is not a proper means of hedging against the possibility of failed reunification efforts, or of securing parental cooperation with those efforts. It is a last resort, to be considered only when the child would be in danger if allowed to reside with the parent. The law requires that a child remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child. The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children. (*In re Kieshia E., supra*, 6 Cal.4th at p. 76; *In re Basilio T., supra*, 4 Cal.App.4th at p. 169; *In re Paul E.* (1995) 39 Cal.App.4th 996, 1001, 1003 [46 Cal.Rptr.2d 289].)

Karla C. appeals from a dispositional order maintaining her son Henry V. in out-of-home placement. She contends there was no clear and convincing evidence that Henry would be substantially endangered if returned home, or that there were no means of protecting him other than removal from parental custody. We agree, and reverse. Not only was the evidence insufficient, but on this record it is impossible for us to tell whether the court applied the clear and convincing evidence standard to its dispositional findings.

## BACKGROUND

Henry, who was four years old, was detained in March 2003 after he told teachers at his day care center that his bottom was hurting. He was not examined at first because his teacher was busy, but when he complained the next day he was found to have three linear burn marks on his buttocks. Henry

---

[1] Further statutory references are to the Welfare and Institutions Code.

said he was burned by a lamp in his room. Karla said Henry had told her the same thing, and she did not understand how the injury happened. Examining doctors concluded the first and second degree burns were inconsistent with the lamp story, and most likely inflicted by the curling iron Karla had in her bathroom.

The dispositional report noted that Henry had significant speech and developmental delays. There had been previous referrals in 1999 and 2001 after Karla left Henry with relatives who did not know where she was living. The social worker reported it was clear Henry was not getting the same attention and care his younger stepsiblings were receiving. Karla and her boyfriend, with whom Henry and his stepsiblings lived, commented to the social worker that Henry and his older brother Marcos (who lived with his maternal great-grandmother) were not like the "normal" stepsiblings because their father was a criminal drug user. Marcos also had speech and developmental delays.

Attached to the report was a psychological evaluation by Leopoldo F. Villela, Ph.D. Dr. Villela described Henry as vivacious and alert. He was attentive and persistent in performing his diagnostic tests, despite his delayed speech. Henry had a positive image of himself and was appropriately assertive when he needed to go to the bathroom. However, his limited language kept him from expressing and dealing with the "fears that are not uncommon in children of this age." Dr. Villela also stated that "the unexplained burns may have accentuated his reluctance to talk for fear of retribution from whoever inflicted that abuse." The speech delay was Dr. Villela's "most dramatic finding." Henry was two years behind in this area. Dr. Villela recommended exploring whether Henry was receiving appropriate coaching at home. He suggested a bonding study with Karla, "where she and Henry can be viewed and assessed," as well as speech therapy. The doctor concluded: "Reunification at this time is not recommended until further history and knowledge of the mother is fully assessed. Nonetheless, his visits with her must be monitored for the time being until she finishes a parent education class, where she learns developmental milestones. Individual therapy should be offered to the mother where she can feel confident and supported to explore the possible abusive behaviors that were unexplained in the reports."

In an addendum report filed shortly before the combined jurisdictional and dispositional hearing, the social worker reported that Henry had been moved to a new shelter care placement after receiving a "small scratch below his left eye as a result of playing with another child." Because this was his second facial injury, the social worker and the foster mother agreed a new placement was needed. The social worker said Karla was making progress showing

more affection to Henry during her weekly visits, though Henry continued to interact more with his siblings. The social worker recommended a bonding program. He noted that Karla had completed a parenting class, and the prospects for reunification were good. However, the social worker still recommended maintaining Henry in out-of-home placement.

At the hearing, a pediatrician testified that the burns were most likely inflicted with the curling iron while Henry was standing up. She said the parents had "been forthcoming and seem to be extremely cooperative." Henry's day care teacher testified that he was an honest child whom she had never known to fabricate, though this may have been the result of his limited language skills. All he would say about his injury was that it had been caused by "la luz"—"the light." The social worker testified that Henry said he fell off his bed and was burned on the lamp. Karla told the worker she was in her bedroom at the time. She said she had noticed "a scratch" on his buttocks but did not think medical attention was required. The social worker noted that Henry was a very active and aggressive child who required a lot of supervision.

After the hearing shifted to the dispositional phase, the social worker resumed testifying. Henry had told the worker he wanted to return home. When asked what the detriment to Henry would be if he were to return, the social worker said it was Karla "not believing about the injury, the child abuse." He said Karla needed therapy to create a better bond with Henry. He acknowledged that services were available to support bonding in the home if Henry were returned, including a counseling program that comes to homes, unannounced visits, and public health nursing services. The social worker attributed Henry's lack of a bond with Karla to his early experiences being dropped off with relatives, and "issues about the relationship between the mother and [her boyfriend] that they did not want these children" (i.e., Henry and Marcos). He gave Karla "a lot of credit" for her willingness to immediately attend parenting classes, which she had completed. He indicated Karla would be likely to do what the court told her to do if Henry were kept in out-of-home placement.

Karla's attorney emphasized the availability of in-home services, and argued Henry should be returned home. Counsel for the Agency emphasized the social worker's recommendation, and asked the court to "leave Henry out of the home for an additional six months," with the option for "the Agency to return and ask for an early return if the signs are promising." Counsel for Henry and Marcos was concerned "about not solely the physical risks, but the emotional risks at this time when there is an emotional distance between the mother and Henry." She agreed with the recommendation for out-of-home placement. Counsel for Karla's boyfriend said his client was prepared to be a father figure for Henry.

The court said it found Dr. Villela's report persuasive, and it was not prepared to allow Henry to return home until a bonding study was done. Given the serious nature of the burns, and the possibility that Henry's fears might be associated with physical abuse, the court wanted these issues addressed before he was returned, though the court anticipated "a very strong possibility" of reunification. Finding "continuance at home would be contrary to his welfare as there is substantial danger to his physical health and physical or emotional well-being that is not yet fully resolved," the court ordered Henry to be placed out of home.

## DISCUSSION

"The governing statute, section 361, subdivision (c), is clear and specific: Even though children may be dependents of the juvenile court, they shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being and there are no 'reasonable means' by which the child can be protected without removal. (See *In re James T.* (1987) 190 Cal.App.3d 58, 66 [235 Cal.Rptr. 127] [noting clarity and specificity of predecessor version of § 361].) The statute embodies 'an effort to shift the emphasis of the child dependency laws to maintaining children in their natural parent's homes where it was safe to do so.' (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1216 [272 Cal.Rptr. 316]; see also *In re Paul E.*[, *supra*,] 39 Cal.App.4th 996, 1005.)" (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288 [98 Cal.Rptr.2d 93].)[2]

"[I]n dependency proceedings the burden of proof is substantially greater at the dispositional phase than it is at the jurisdictional phase if the minor is to be removed from his or her home. (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1111–1113 [200 Cal.Rptr. 789] [burden of proof in jurisdictional phase

---

[2] Section 361, subdivision (c) provides in relevant part: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following: [¶] (1) There is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor or would be if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' or guardians' physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

is preponderance of the evidence; burden of proof in dispositional phase is clear and convincing evidence when court awards custody to a nonparent]; see also §§ 355, 361, subd. (b) [now subd. (c)].) [¶] This heightened burden of proof is appropriate in light of the constitutionally protected rights of parents to the care, custody and management of the children. (See *Santosky v. Kramer* (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 102 S.Ct. 1388].)" (*In re Basilio T., supra*, 4 Cal.App.4th 155, 169, superseded by statute on another point, as noted in *In re Lucero L.* (2000) 22 Cal.4th 1227, 1239–1242 [96 Cal.Rptr.2d 56, 998 P.2d 1019].)

"Of course, on appeal, the substantial evidence test is the appropriate standard of review. Thus, in assessing this assignment of error, 'the substantial evidence test applies to determine the existence of the clear and convincing standard of proof . . . .' (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038 [177 Cal.Rptr. 783].)" (*In re Basilio T., supra*, 4 Cal.App.4th at p. 170.)

The Agency contends the evidence supporting the dispositional order in this case is overwhelming. We cannot agree. The physical abuse suffered by Henry, while substantial, was apparently a single occurrence, and neither the Agency nor the court considered it an obstacle to reunification in the near future. The court explicitly premised the out-of-home placement on the need to complete a bonding study. However, there was no suggestion the study recommended by Dr. Villela could not have been performed while Henry resided in his family home. Dr. Villela's recommendation against returning Henry to Karla did not amount to clear and convincing evidence of a threat to Henry's safety or emotional well-being. We note that Dr. Villela's report was issued before Henry was moved to a new placement due to injuries he suffered in foster care.

At the hearing, the court did not mention the existence of alternatives to out-of-home placement, though on the form used to record the dispositional order a box was checked next to a paragraph reciting the findings required by section 361, subdivision (c)(1), including "there are no reasonable means by which the child's physical health may be protected without removing the child from the child's parents'/guardians' physical custody." There was, however, ample evidence that appropriate services could have been provided to Karla and Henry in the family home. The social worker acknowledged that in-home bonding services were available, and that unannounced visits and public health nursing services were potential methods of supervising an in-home placement. These resources would address the bonding issue and mitigate the risk of further physical abuse. The social worker credited Karla for being fully cooperative in taking advantage of the services that had been offered to her. The social worker's suggestion that out-of-home placement would be useful to secure Karla's further cooperation was not a proper

consideration. The statutory grounds for removing a child from parental custody are exclusive. A mother's fundamental right to the custody of her child is not a bargaining chip.

■ We accept the court's factual findings and all reasonable inferences supporting them. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 [60 Cal.Rptr.2d 315].) ■ However, the findings before us are not sufficient to support an out-of-home placement under the controlling clear and convincing evidence standard. Our conclusion is bolstered by the absence of any indication on the record that either the court or the Agency understood the necessity of making the dispositional findings on clear and convincing evidence. There was no mention of this standard at the hearing or in the social worker's reports. On the order form, there was a box for determining the allegations of the petition true "by clear and convincing evidence," but this box was left blank. ■ A dispositional order removing a child from a parent's custody is "a critical firebreak in California's juvenile dependency system" (*In re Paul E., supra,* 39 Cal.App.4th at p. 1003), after which a series of findings by a preponderance of the evidence may result in termination of parental rights. Due process requires the findings underlying the initial removal order to be based on clear and convincing evidence. (*Id.* at p. 1001; *Cynthia D. v. Superior Court, supra,* 5 Cal.4th at pp. 253–255.) Here, where the jurisdictional and dispositional phases were combined in a single hearing, we cannot be confident the lower standard of proof governing the jurisdictional findings was not transferred to the dispositional findings.

This is not the first case to come before us in which the court and the Agency did not appear to fully appreciate "the balance between family preservation and child well-being struck by the Legislature" when it drafted section 361. (*In re Jasmine G., supra,* 82 Cal.App.4th at p. 289.) We understand and share in the overriding concern with the welfare of children who are dependents of the juvenile court. However, our dependency system is premised on the notion that keeping children with their parents while proceedings are pending, whenever safely possible, serves not only to protect parents' rights but also children's and society's best interests. "Our society does recognize an 'essential' and 'basic' presumptive right to retain the care, custody, management, and companionship of one's own child, free of intervention by the government. (See, e.g., *Stanley v. Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [68 L.Ed.2d 640, 101 S.Ct. 2153]; Civ. Code, §§ 232 et seq., 4600, subd. (c), 7000 et seq.; Welf. & Inst. Code, § 361 et seq.) Maintenance of the familial bond between children and parents— even imperfect or separated parents—comports with our highest values and usually best serves the interests of parents, children, family, and community. Because we so abhor the involuntary separation of parent and child, the state

may disturb an existing parent-child relationship only for strong reasons and subject to careful procedures.

"Of course, sexual or other serious physical abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. . . . When a parent abuses his or her own child, or permits such abuse to occur in the household, the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody. (See § 300, subds. (d), (e), (j).)

"Even when one so seriously violates parental responsibilities, however, the strong countervailing interests unique to the status of parent must still be considered. A mere finding of parental abuse does not sever the legal and familial bond between parent and child. The Juvenile Court Law restricts judicial power to remove a child from the care and society of even an abusive or abuse-tolerant parent. (§§ 319, subd. (d), 360, 361, subd. (b) [now subd. (c)].)" (*In re Kieshia E.*, *supra*, 6 Cal.4th at pp. 76–77, italics omitted.)

In all too many cases, the risks involved in returning a child to parental custody at the dispositional phase are clearly established. When they are not, as in this case, the juvenile court must recognize the legal restraints against separating parent and child.

## DISPOSITION

The dispositional order is reversed. The matter is remanded for further proceedings consistent with the views expressed in this opinion, and with consideration of Henry's current circumstances.

Corrigan, Acting P. J., and Pollak, J., concurred.