Filed 3/6/14  D.D. v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| D.D.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN MATEO COUNTY,<br><br>        Respondent;<br><br>SAN MATEO COUNTY HUMAN<br>SERVICES AGENCY,<br><br>        Real Party in Interest. | A140392<br><br>(San Mateo County<br>Super. Ct. No. JV80426) |

D.D., the father of dependent child F.D., petitions for extraordinary writ review of a juvenile court order removing F.D. from father's custody and setting a permanency planning hearing under Welfare and Institutions Code section 366.26.[1]  D.D. (father) contends:  (1) there was insufficient evidence that placement with father was ineffective in protecting F.D., and (2) the court erred in removing F.D.  We conclude substantial evidence supports the court's determinations.  Accordingly, we deny father's petition.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

# I.  BACKGROUND

## A.  Dependency Proceedings Before June 2013

In April 2010, the San Mateo County Human Services Agency (Agency) filed a dependency petition under section 300, subdivision (b), on behalf of F.D., who was then three years old.  Agency alleged father was unable to protect F.D. from her mother, who was suffering from untreated mental illness.

After hearings on jurisdiction and disposition in June 2010, the juvenile court sustained the petition and declared F.D. a dependent child to remain in father's custody with family maintenance services, including parenting classes and counseling.  The court later ordered father, who had a history of drug use and depression, to submit to drug testing.  The court prohibited the mother from having contact with F.D. or father.  The court denied visitation to F.D.'s maternal grandmother, who had tested positive for methamphetamines, until she tested clean and exhibited appropriate behavior.

In late 2010 and early 2011, Agency filed a supplemental petition under section 387 and several amendments, alleging placement with father had not been effective in protecting F.D.  Agency alleged father had tested positive for methamphetamines, failed to participate in court-ordered counseling and other services, and violated the court's order prohibiting contact between F.D. and the maternal grandmother.  F.D. was removed from father's custody.  The court sustained the supplemental petition and ordered reunification services for father.

During the period when reunification services were provided, Father made some progress in addressing the problems that had led to F.D.'s removal.  Father completed an outpatient drug treatment program, and he tested negative for drugs.  Father participated in individual therapy sessions, as well as therapy sessions with F.D.  On Agency's recommendation, the court ordered that F.D. be returned to father's custody in July 2012.  F.D. remained a dependent of the court, and family maintenance services were provided.

## B.  The June 2013 Supplemental Petition

In June 2013, Agency again filed a supplemental petition under section 387, alleging placement with father was not effective in protecting F.D.  Agency alleged that,

between February 4 and June 25, 2013, father missed numerous required drug tests, and on June 12, 2013, he tested positive for amphetamines and methamphetamines. Father admitted he had relapsed and used methamphetamines. Father also had failed to keep appointments for mental health and medical services required by the case plan. The court ordered F.D. detained in foster care. Father continued to miss some of his required drug tests in September and October 2013. In November 2013, father again tested positive for methamphetamines.

On November 26, 2013, after jurisdiction and disposition hearings, the juvenile court sustained the supplemental petition, finding the previous dispositional order (i.e., returning F.D. to father) had been ineffective in protecting F.D. As to disposition, the court found by clear and convincing evidence there would be a substantial danger to F.D.'s physical or emotional well-being if she were returned to father, and there were no reasonable means to protect F.D. without removing her. The court ordered that father receive no further reunification services, because the statutory time lines had been exhausted. The court set a permanency planning hearing under section 366.26 for March 11, 2014.

Father filed a writ petition seeking review of the juvenile court's order and a stay of the permanency hearing. (See § 366.26, subd. (l).) We issued an order to show cause, and Agency filed a response.

## II. DISCUSSION

### A. Standard of Review

A supplemental petition under section 387 is used to change a dependent child's placement from the physical custody of a parent to a more restrictive placement. (§ 387; Cal. Rules of Court, rule 5.560(c);[2] *In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) At the jurisdictional stage, the court determines whether the factual allegations of the petition are true and whether the previous disposition has been ineffective in protecting the child. (§ 387, subd. (b); rule 5.565(e)(1); *In re A.O.* (2010) 185 Cal.App.4th 103,

---

[2] All rule references are to the California Rules of Court.

110.)  If the court makes these findings, it then determines disposition, i.e., whether removing the child from the parent's custody is appropriate.  (Rule 5.565(e)(2); *In re T.W., supra,* at p. 1161.)  Courts have held that, to remove a child from a parent's custody pursuant to a section 387 petition, the juvenile court must apply the standards in section 361, subdivision (c)(1), and find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody. . . ."  (See *In re T.W., supra,* at p. 1163; *In re Javier G.* (2006) 137 Cal.App.4th 453, 462; but see *In re A.O., supra,* at pp. 111–112 [questioning whether clear and convincing evidence standard applies to a second removal where child has previously been removed from, and then returned to, parent's custody].)

We review the court's jurisdictional and dispositional findings for substantial evidence.  (*In re T.W., supra,* 214 Cal.App.4th at p. 1161.)

## B.  Analysis

Father contends Agency failed to show that the previous disposition was ineffective or that leaving F.D. in father's custody would create a substantial risk of harm.  Specifically, he asserts Agency failed to demonstrate his drug use and failure to participate in mental health and medical services affected his ability to provide a safe environment for F.D.  We disagree.

The juvenile court noted it based its decision on the entire history of this dependency case (spanning more than three years), including all the reports filed by Agency.  The evidence, including these reports, supports a conclusion father did not consistently or successfully address his substance abuse and mental health difficulties.  Father did not consistently engage in required drug testing, and multiple reports note his missed tests, resulting in "administrative dirty" results.  These failures to test make it impossible to know the full extent of father's substance abuse, as well as demonstrating his inconsistent compliance with court orders.  In addition, father tested positive for

4

methamphetamines on multiple occasions, and in some instances admitted relapsing. Father also demonstrated a pattern of not fully engaging in services, such as parenting education and individual psychotherapy to address his depression, and he often missed appointments with service providers. These failures led to the first removal of F.D. from father's custody in October 2010.

Although father made sufficient progress to warrant returning F.D. to his custody in July 2012 with family maintenance services, the same problems subsequently recurred, leading to the June 2013 supplemental petition. As noted, between February 4 and June 25, 2013, father missed the majority of his required drug tests, and on June 12, 2013, he tested positive for amphetamines and methamphetamines. Father admitted he had relapsed. During this same time period, father failed to participate adequately in mental health and medical services required by the case plan. Despite multiple reminders, father failed to attend an important appointment with a psychiatrist, and, as of June 2013, he had not restarted individual therapy or participated in a medication evaluation.

Further, we note that, even during the period between F.D.'s detention in June 2013 and the court's rulings on jurisdiction and disposition in November 2013, father continued to miss a significant number of his required drug tests, and he again tested positive for methamphetamines on November 14, 2013. Father did participate in individual therapy and a drug treatment program during this period, but his attendance was inconsistent.

The record also supports a conclusion that father's inconsistency in addressing his substance abuse and mental health problems negatively affected his ability to provide a safe and stable home for F.D. In light of the evidence presented, the court could conclude father's drug use posed a risk to F.D.'s physical and emotional well-being. (See § 300.2 ["[T]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. . . ."]; *In re E.B.* (2010) 184 Cal.App.4th 568, 575 [mother's alcohol abuse endangered children's physical and emotional health].)

5

Although father denied using drugs in F.D.'s presence, there was evidence she had been exposed to drug activity while in his custody. F.D. told the social worker drugs were " 'little packages like detergent for laundry.' " F.D. said she knew her father used drugs, because he told her he did. During this conversation with the social worker, F.D. turned a picture of her and her father around to face the wall. She then grabbed a doll, colored its eyes black with a pen, and stated, " 'I don't like dad to have friends, they give him drugs.' " In explaining its decision to remove F.D. from father's custody, the juvenile court noted F.D.'s knowledge of what drugs look like and how father obtains them.

We also note that, during his relapse in June 2013, father left F.D. with the maternal grandmother, whose drug use and possible dealing had led to court orders prohibiting contact between her and F.D. The maternal grandmother had previously taken F.D. from her placement without authorization and kept her for two days. This aspect of father's conduct, too, was part of a larger pattern of noncompliance with court orders, as he repeatedly allowed contact between F.D. and the maternal grandmother.

There was evidence father's above conduct, and his failure to address his substance abuse and mental health issues, posed risks to F.D.'s physical and emotional well-being. While F.D. was in his custody, father reduced his and F.D.'s participation in therapy. F.D.'s foster mother and her therapist expressed concern F.D. was being required to keep secrets for father about father's behavior, including his allowing contact with maternal grandmother and his driving on a suspended license. Father cut off F.D.'s contact with her court-appointed special advocate. The social worker received information that, while in father's custody, F.D. often wandered around the neighborhood unsupervised. Police responded to a report father was throwing F.D.'s clothes out the window. Father had difficulty maintaining stable housing, despite financial assistance from Agency.

F.D. also suffered emotional distress as a result of uncertainty over her long-term placement. F.D. became paranoid and believed the court was watching her and had cameras in her bedroom in her foster placement. Despite being told not to discuss the case with F.D. because of her emotional fragility, father sometimes exacerbated the

problem, such as when he told F.D. he had to call the police because Agency allegedly would not let him see F.D.

The cases cited by father, *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067 (*Kimberly R.*) and *In re Paul E.* (1995) 39 Cal.App.4th 996 (*Paul E.*), are distinguishable. In *Kimberly R.*, the mother was managing her mental illness with medication and psychiatric and psychological supervision, and she presented evidence that she no longer used alcohol or drugs and that she complied with her case plan. (*Kimberly R., supra,* at p. 1079.) The appellate court held the mother's tardiness in picking up the child from school on a single occasion did not pose a substantial risk of harm to the child and did not provide substantial evidence supporting removal. (*Id.* at pp. 1071, 1079.) In *Paul E.*, the parents substantially complied with the case plan, and the appellate court found the problems with the home (a shorted lamp socket, a propeller on a boat, and a wading pool with dirty water in it) were "trivial to the point of being pretextual." (*Paul E., supra,* at pp. 1000, 1005.) Here, in contrast, the evidence supports a conclusion father's failure to engage effectively and consistently with the services offered to him, and his inability to address his substance abuse problem, rendered him unable to provide a safe and stable environment for F.D. and created risks to F.D.'s physical and emotional well-being. (See *In re T.W., supra,* 214 Cal.App.4th at p. 1163 [focus of removal statute is on averting harm to child].)

For the foregoing reasons, we conclude substantial evidence supports both the trial court's jurisdictional finding that the previous placement was ineffective in protecting F.D., and the dispositional finding that placement with father posed risks to F.D.'s physical and emotional well-being.

Father's remaining arguments are unpersuasive. First, as to jurisdiction, father notes the court, adopting the language of the supplemental petition, stated the previous placement was ineffective in addressing "the father's rehabilitation in his capacity to be protective of the child." Father argues his lack of rehabilitation was not a proper basis for removal of F.D. from his custody. But, as Agency notes, in this case the father's inability to address his substance abuse and related problems affected his ability to provide a

protective environment for F.D.  The record shows the court properly focused on whether placement with father had been effective in protecting F.D.  (See § 387, subd. (b); rule 5.565(e)(1); *In re A.O., supra,* 185 Cal.App.4th at p. 110.)

Second, as to disposition, father contends there were reasonable means to protect F.D. without removing her from father's custody (see *In re T.W., supra,* 214 Cal.App.4th at p. 1163); specifically, he argues further family maintenance services could have been provided.  Substantial evidence supports the juvenile court's contrary finding.  As the court noted, father received more than 18 months of reunification services, followed by 11 months of family maintenance services, but he did not participate adequately in the services and did not succeed in addressing his substance abuse and mental health issues. In light of the long record of father's inconsistent efforts to use available services, substantial evidence supports the court's conclusion further services did not constitute a reasonable means of protecting F.D.  The court did not err in removing F.D. from father's custody at disposition.[3]

---

[3] Father does not challenge the court's determination that, once it ordered removal of F.D. at disposition, the proper course was to set a section 366.26 hearing, in light of the reunification services already provided to father.  (See rule 5.565(f).)

## III. DISPOSITION

Father's petition and request for a stay are denied.  This decision is final in this court immediately upon filing.  (See rules 8.452(i), 8.490(b)(2)(A).)

_____
Becton, J.*

We concur:

_____
Margulies, Acting P.J.

_____
Dondero, J.

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.