Filed 9/18/14  In re Mi.F. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re MI.F. et al., Persons Coming Under the Juvenile Court Law. | B253923 (Los Angeles County Super. Ct. No. CK35049) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  C.D.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle Cortez, Judge.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Despite multiple opportunities over a two-year period, mother refused to attend a court-ordered anger management class or to follow other court orders. Although the court initially allowed mother's 15-year-old son Mi.F. to remain in her care, after mother assaulted her husband, the juvenile court removed him from her custody and placed him in his father's custody. Mother's assault on her husband (not father) followed physical abuse of her daughter, domestic violence with her ex-husband (father), and inappropriate outbursts in front of the court and social workers.[1] Over the course of two years mother failed to demonstrate any improvement in controlling her outbursts. Mother's conduct amply supported the juvenile court's conclusion that Mi.F. was at risk in her custody. We affirm the juvenile court's dispositional order.

FACTS AND PROCEDURE

*1. Initial Petition*

On November 23, 2011, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition requesting that Mi.F. and Mo.F. (the children) be detained. The petition alleged mother physically abused Mo.F. by repeatedly slapping her face and buttocks and inflicted a bruise, which mother attempted to conceal with makeup. The petition alleged that mother's conduct towards Mo.F. also placed Mi.F. at risk of harm.

Mo.F. reported to a police officer that mother had bruised her face below her eye and spanked her buttocks 20 to 30 times. Mother admitted spanking Mo.F. on her face after Mo.F. was suspended from school but denied spanking her buttocks. Mother also admitted that in a prior case she ran over her husband out of anger. Mother was on probation for having run over her husband. Mother initially agreed to receive voluntary services but later refused them.

Mother had five children, two of whom are the subjects of this case. Mother lost custody of her other three children. Mother's oldest child was cared for by her great-grandmother, her second child was removed at birth, and her third child was adopted.

---

[1] Mother was married to K.D. at the time of these proceedings, and he is referred to as husband. Her ex-husband M.F. is the father of Mo.F. and Mi.F. and is referred to as father.

DCFS reported that mother had a criminal history including felony assault and driving while under the influence. Mother admitted that she had two children who had been adopted.

When mother was told if she refused voluntary services DCFS would consider filing a petition, mother threw the phone across the room. When a social worker told mother a petition would be filed, mother screamed at the social worker. There were numerous prior reports of abuse on Mi.F. and Mo.F. and their siblings. With respect to Mi.F. and Mo.F., the referrals dated back to 2003. In 2006, it was determined that mother and her husband's conflict did not pose a risk to the children.

At the detention hearing on November 23, 2011, the juvenile court informed mother "you do seem to have a problem with your anger, and, when something happens with your children, it's like you just strike out at them. And you have admitted to the injuries to the face. That is very problematic. It's not only injurious physically to the children, but it is also showing them that this is the way you act; this the way a parent acts when they can't resolve something with their children." The court found a prima facie case that the children were described under Welfare and institutions Code section 300.[2] The court released the children to mother's custody. The court ordered mother "forthwith" into an anger management program.

## 2. First Amended Petition and Continued Dependency

On January 1, 2012, DCFS filed a first amended petition under section 300 alleging: "On 10/20/2011, the children['s] mother . . . physically abused the child [Mo.F.] by repeatedly slapping the child's face and buttocks, inflicting a bruise to the child's face and a scratch to the child's right eye. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The mother attempted to conceal the child's injury with face make up. Such physical abuse of the child by the mother endangers the child's physical health, safety and well-being and places the child and the child's sibling [Mi.F.] at risk of harm, damage, danger, and physical abuse." DCFS also alleged: "On or about 10/07/11, during a child custody visit, the children['s] father . . . and mother . . . engaged in

---

[2]      Undesignated statutory citations are to the Welfare and Institutions Code.

3

a physical confrontation in the presence of the children, whereby the father was arrested on charges of battery of [an] ex-spouse. Further, the mother and father were ordered by Superior Court to comply with an Anger Management/Domestic Violence course. Such conduct between the father and the mother endangers the children's physical health, safety and wellbeing and places the children at risk of harm, damage, and danger, and creates a detrimental environment."

In January 2012, DCFS reported that mother did not take an anger management course. Mother disrupted father's visitation with the children by initiating a verbal confrontation with father in the presence of the children. Mother also acted inappropriately with the social worker and was unable to control her outbursts.

The juvenile court again ordered mother to attend an anger management class. On January 27, 2012, the court ordered the children remain in mother's care. On February 26, 2012, the court denied DCFS's request that the court detain the children.

On March 6, 2012, the court granted DCFS's motion to detain the children after learning that mother used marijuana. But on March 9, 2012, the court released the children back into mother's care over DCFS's objection. Mother was admonished that if her levels of marijuana failed to decrease, the children would be removed from her care. The court warned mother that she was "absolutely not to use marijuana."

After mother tested positive for cocaine, the court detained the children. In March 2012, DCFS reported that mother tested positive for cocaine and marijuana. In court found a prima facie case for detaining Mi.F. and Mo.F. Mother was ordered to test weekly for controlled substances. A month later mother admitted to using cocaine and to drinking alcohol after two years of sobriety.

In March 2012, mother started an anger management class. But, mother refused several times to participate in on-demand drug testing.

### 3. Second Amended Petition and Continued Dependency

On March 27, 2012, DCFS filed a second amended petition adding the allegations that mother has a history of alcohol abuse and currently used marijuana and cocaine.

4

DCFS reported that mother missed three drug tests in March and April 2012 and tested positive for marijuana twice.

Mother testified at an adjudication hearing on June 28, 2012. Mother admitted to "tapp[ing]" Mo.F. on the face and admitted that Mo.F. had a bruise near her left eye. Mother testified that father hit her in the chest when she complained of a postdated check for child support. Mother testified that father also violated a restraining order put in place by the criminal court. Mother denied that she was ordered to attend an anger management class. Mother admitted that she "[o]ccasionally" used alcohol in the past. She had attended Alcoholics Anonymous meetings 24 years earlier. Mother testified she stopped using marijuana. Mother admitted to having used cocaine. Mother testified that she was enrolled in an anger management class and completed a parenting class.

The court did not find mother's testimony credible. With minor modifications, the court sustained the petition. The court released the children to mother's care. Mother was ordered to attend individual counseling to address the physical abuse of children and mother's criminal history. She was ordered to complete a full drug/alcohol program and to submit to random testing. She was again ordered to participate in an anger management program.

On January 24, 2013, in advance of the six-month review hearing, DCFS reported that mother's husband left the family home after he and mother argued. The police instructed husband to leave the home. Mother missed three tests for controlled substances and her other tests were negative. Mother had a letter from a pastor indicating that she completed nine classes out of the required 52 in an anger management course.

On February 25, 2013, DCFS reported that the issues that brought this case before the court remain unresolved. Another referral had been generated when Mo.F. reported that mother pulled her out of bed, dragged her downstairs, started hitting her and pulling her hair. Mo.F. reported suffering bruises as a result. Mo.F. reported that mother had been drinking "because she was going through a divorce." DCFS was investigating the referral. Several notes from father stamped by the Los Angeles County Sheriff's Department, Norwalk Station showed that mother failed to comply with court-ordered visitation.

5

At a hearing on February 25, 2013, the court had to excuse the children because mother made inappropriate comments in front of them. The court ordered mother to complete her anger management class and to have regular testing and to show up for visits as previously ordered by the court.

The court continued jurisdiction over the children and ordered DCFS to provide family maintenance services. The court ordered mother to be on time for father's visits. During that period, mother failed to appear for three drug tests and tested positive for cannabinoids twice and codeine once. She was terminated from a testing site after exhibiting "aggressive, bizarre and argumentative behaviors."

### 4. Father's Section 388 Petition and Mother's Spousal Abuse

Father filed a section 388 petition seeking custody of Mo.F. and in June 2013, DCFS recommended her placement with father. The court granted father's section 388 motion to have custody of Mo.F.

Mother had been arrested after a domestic dispute with her husband. The crime report indicated that mother was slapping husband and pulling him by his mustache. Mother pushed husband on his chest and slapped husband with open hands and hitting him with closed fists. Husband estimated she slapped and hit him approximately 40 times. Husband reported that mother ripped off his tank top. Mother was handcuffed, and she yelled "Are you kidding me?" Mother denied husband's description of the event.

Both children were home at the time of mother and husband's altercation. Mo.F. observed mother push and slap husband. Mi.F. heard the argument, but did not see anything because he was in his room.

### 5. Second Supplemental Petition

On July 1, 2013, DCFS filed another supplemental petition alleging: "On 5/17/2013 the children['s] mother . . . and the mother's husband . . . engaged in a physical altercation in the presence of the child, [Mi.F.] The mother has failed to complete a court ordered 52 week anger management program. Such conduct on the part of the mother and the mother's failure to comply with the Juvenile Court['s] Orders endangers the children's physical health and safety and places the children at risk of harm."

6

Mi.F. was allowed to stay in mother's custody, but the juvenile court ordered that mother's husband "[was] not to be in mother's home or visit in home." Mother ignored the court order and allowed her husband into her home. Husband was in mother's home when a social worker showed up for an unannounced visit. Mother was upset the social worker came to the house and yelled at her, "You fucken bitch, you fucken whore! . . . You ruined my family . . . ." When the social worker said that husband was not supposed to be in the home mother again yelled obscenities. Mi.F. put his arms on mother's shoulders and told her to calm down. Husband also tried to calm mother. But mother continued to yell at the social worker. Mother's conduct caused neighbors to come out of their homes.

During this period, mother continued to miss drug tests and test positive for marijuana.

On August 26, 2013, the juvenile court ordered Mi.F. released to father pending a continued disposition hearing. At the later hearing, on January 17, 2014, mother waived her rights and submitted to the supplemental petition. In its dispositional order, the court ordered Mi.F. removed from her custody and placed in father's care. The court recognized that Mi.F. was 15 years old and was doing well in school. But the court balanced those facts with mother's failure to complete an anger management class or otherwise learn to control her outbursts. The court emphasized that the domestic violence incident occurred when Mi.F. and Mo.F. were home, and that on another occasion Mi.F. had tried to calm his mother down when she was being abusive towards a social worker. "The court notes that it should not be Mi.F. to try to maintain the safety of the household or his mom's anger issues under control." The court found by clear and convincing evidence that there was substantial danger if Mi.F. were returned home. Mother appealed from the court's dispositional order placing Mi.F. in father's custody.

## DISCUSSION

Mother challenges the court order removing Mi.F. from her care and placing him in father's custody. She emphasizes the undisputed fact that Mi.F. preferred to live with mother and continue attending high school, where he was performing well. Mother argues that Mi.F. was not at risk in her custody. We disagree.

7

To remove Mi.F. from mother's custody the juvenile court had to find that by clear and convincing evidence Mi.F. was in physical danger if left in the home. (*In re Paul E.* (1995) 39 Cal.App.4th 996, 1000-1004.) The juvenile court's disposition was overwhelmingly supported by mother's conduct throughout the dependency period. On November 23, 2011, the court ordered mother to attend an anger management program. On August 26, 2013, when the court removed Mi.F. from mother's care mother still had not completed such program. Her failure to complete that program was particularly problematic in this case because mother repeatedly used physical violence when she was upset. This case started when mother hit Mo.F. on the face, bruising Mo.F. Mother acted inappropriately with social workers and even had outbursts in court. Nevertheless the court repeatedly allowed Mi.F. to stay in her custody and attempted to take less drastic steps such as ordering mother's husband to stay out of the family home. But mother ignored the court's order, allowed her husband to live with her, and assaulted him when Mi.F. was home. Mother's inability to control her outbursts over a substantial period of time demonstrates that Mi.F. was at risk of harm in her care. Although mother had not yet directed her outbursts towards Mi.F., the court was not required to wait until Mi.F. was injured to remove him from mother's custody. (See *In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)

## DISPOSITION

The court's dispositional order is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.                    GRIMES, J.

8