Filed 10/6/15  In re Elijah C. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ELIJAH C. et al., Persons Coming Under the Juvenile Court Law. | B258617 (Los Angeles County Super. Ct. No. CK92381) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>CECILIA B.,<br><br>        Defendant and Appellant. | |

APPEAL from orders and findings of the Superior Court of Los Angeles County. Stephen C. Marpet, Juvenile Court Referee.  Affirmed.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

_____

Cecilia B. (mother) appeals from the juvenile court's jurisdiction order and findings after it sustained a petition pursuant to section 387 of the Welfare and Institutions Code[1] filed on behalf of her children, Elijah C. (Elijah) and Cherish B. (Cherish) (collectively minors). Also, mother appeals from the disposition order removing the minors from her custody and requiring that her visits with them be monitored. We find no error and affirm.

## FACTS[2]

"*The minors*

"Elijah was born in 2008. His father is Shannon C. (father). Cherish was born in 2010. Her father is George B. (George).

"*2012 dependency proceeding regarding Elijah*

"On March 5, 2012, the Department [of Children and Family Services (Department)] filed a petition regarding Elijah under . . . section 300, subdivisions (a) and (b). Father was the offending parent. At the time, mother was incarcerated.[] A month later, the juvenile court terminated jurisdiction with a family law order giving mother sole legal and physical custody.

"*Events leading up to detention in 2013*

"On April 2, 2013, the minors came to the attention of the Department after receiving a call from a clinician at a hospital who reported that the mother had been placed on a psychiatric hold after she overdosed on pills in an attempt to commit suicide. According to the clinician, mother had attempted suicide on two prior occasions, and each time had been hospitalized.

"Mother tested positive for cannabis and cocaine.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     In part, we have utilized the statement of facts from our prior opinion, I*n re Elijah C.* (Feb. 10, 2015, B254463) [nonpub. opn.] (*Elijah C. I*).

2

"At the time of the referral, mother had been residing with maternal grandmother, Alberta W. (Alberta).[3]  A social worker visited Alberta's home.  She reported that she was Cherish's primary caregiver, Elijah was living with father, and George was incarcerated.  About a week later, the social worker interviewed mother.  During that interview, mother said her life felt like it was turning upside down because she had lost her job and apartment.  She was seeing a therapist, and she was receiving mental health services as well as substance abuse counseling.  She stated that she ensured that the minors were supervised at all times.  The social worker spoke to the minors' teachers and learned that they attended school regularly, and that whenever mother dropped them off, she acted appropriately.

"On July 12, 2013, mother drug tested.  The result was negative.

"About a month and a half later, in August or September 2013, mother was reportedly living in a motel on a voucher.  After running out of psychotropic medication and having trouble sleeping, she drove to a service provider to replenish her medication.  During the ensuing assessment, she acted erratic, leading the service provider to believe she was intoxicated.  Mother submitted to a drug test, which was positive for cocaine.  That meant she had used the drug recently.  She kept trying to rush the assessment, saying that she needed to pick up the minors.  The service provider gave mother a primary diagnosis of Bipolar II and a secondary diagnosis of cocaine abuse.  Based on her diagnosis, she received a prescription for psychotropic medication.  She asked father to take care of the minors until the cocaine was out of her system.

"When a social worker spoke to mother via telephone, she said that she did not have a place to live and was looking for a homeless shelter.  Alberta reported that mother had been living in Alberta's home with the minors but had left a few days before.  Mother returned to Alberta's home, and the social worker spoke to her.  She promised to stay at Alberta's house and submit to a drug test.  Alberta agreed to supervise the minors.

---

**3**    In the appellate record, Alberta is sometimes referred to as Alberta.  On appeal, mother refers to her as Albertha.

"At a team decision meeting on September 24, 2013, mother drug tested. The result was negative. She agreed to continue seeing a psychiatrist and submit to random drug testing. A few days later, the Department received notice that mother was participating in various support groups at a clinic, and had been diagnosed with a panic disorder. A few weeks later, mother consented to the removal of the minors from her custody. Until mother completed her programs, the plan was for Elijah to remain in father's care, and for Cherish to be in the joint care of Alberta and Cherish's paternal grandmother, Denise B. (Denise).

"A social worker inspected father's home. Later, the social worker discovered that father had an extensive criminal history—including a conviction for lewd and lascivious acts with a child under 14 years of age—and had a history of drug abuse and domestic violence. Father consented to Elijah's removal and his placement in the care of Alberta pending further investigation.

"*The section 300 petition*

"The Department filed a petition pursuant to section 300, subdivision (b) alleging that mother and father were unable to supervise and care for the minors. As to mother, it was alleged she had a history of drug abuse, cocaine use, and mental and emotional problems. Regarding father, it was alleged that he was a registered sex offender who had convictions for lewd or lascivious acts with a child under 14 years of age, possession of a controlled substance, and battery on a spouse. The petition alleged that neither of the minors had known Indian ancestry.

"*The detention hearing*

"At the detention hearing, mother and father each executed a Parental Notification of Indian Status form and denied Indian heritage.

"Denise was present at the hearing. She informed the juvenile court that her family had Indian ancestry through the Cherokee and Crow tribes, but her parents were not 'on the roll.' The juvenile court ordered the Department to interview Denise further and 'walk' the matter on if it appeared that notice to the tribes was appropriate.[]

4

"The juvenile court detained the minors and placed them with Alberta. Family reunification services were ordered. Mother was given unmonitored visits on the condition she submit to weekly, random drug tests and not have any missed or positive tests.

"Mother was a no show for drug tests on November 7, 2013, November 18, 2013, December 2, 2013, and December 16, 2013. Other drug tests were negative.

"*Jurisdiction and disposition hearing*

"The parties convened for a hearing on January 6, 2014. Elijah was five years old and Cherish was three years old.

"The juvenile court admitted into evidence the Department's detention report with all attachments, the jurisdiction/disposition report and all attachments, a January 6, 2014 last minute information report with all attachments, a report from a multidisciplinary assessment team, and all minute orders in the case. The parties did not call any witnesses.

"The petition was sustained.

"The juvenile court found by clear and convincing evidence there was a substantial danger to the minors' physical and mental well-being if they remained in mother's custody. The minors were placed with Alberta. Mother was authorized to live in Alberta's home and have unmonitored contact with the minors. However, mother was advised that if she missed a drug test, or tested positive, then she would be ordered out of Alberta's home.

"Mother was ordered to attend and complete a drug and alcohol program with weekly, random testing. In addition, she was ordered to attend and complete an 'aftercare' program with Alcoholics Anonymous, attend individual counseling designed to address the issues in the case, follow-up with a mental health assessment, and take all medications prescribed by a therapist." (*Elijah C. I, supra,* B254463, at pp. 2–6.)

*The first appeal*

Mother challenged the jurisdiction and disposition orders in *Elijah C. I.* We affirmed the jurisdiction order and dismissed the portion of the appeal pertaining to the disposition order. (*Elijah C. I*, *supra*, B254463, at p. 10.)

*The minors' extended visit with mother*

Alberta was hospitalized several times due to illness and was unable to provide care for the minors. As a result, mother provided care. On March 13, 2014, Alberta passed away. Elijah remained in mother's custody. For a while, Cherish was in the custody of Denise B., then later was returned to mother.

Mother began the Asian American Drug Abuse Program (AADAP) on March 17, 2014. She was prescribed Resperdol and Zoloft. Also, she began life coaching classes and individual counseling, and she began drug testing through Pacific Toxicology at a U-Turn testing site. She was a no show for drugs tests scheduled for March 20, 2014, and March 25, 2014.

On April 3, 2014, a social worker assessed mother's home, found no concerns, and recommended that the minors stay with mother on an extended visit. A few days later, at a review hearing, the juvenile court ordered the minors released to mother on the condition that she submit to weekly random drug and alcohol tests, and that her tests come back clean. In addition, she was ordered to continue her current counseling programs. The juvenile court informed her that if she tested dirty or missed a drug test, the minors would be detained.

In the addendum report, the Department reported that mother was having difficulty participating in her treatment programs because of lack of transportation and child care demands. Mother stopped going to the AADAP on April 11, 2014, and she had a missed drug test on April 16, 2014. She did not inform the Department of her transportation needs until late April 2014. On May 2, 2014, a scheduled date for a drug test, mother informed her AADAP counselor and the social worker that she did not want to participate in AADAP anymore. The social worker perceived that mother was overwhelmed by her

6

programs. As assessed by the Department, mother did not understand the serious nature of the dependency case, and she had failed to be fully forthcoming with information.

*Detention*

On May 22, 2014, mother tested positive for cocaine.[4] About a week later, a social worker visited mother's home. The home was dirty and unkempt. When confronted with the test result, mother said it had to be a mistake. Nonetheless, she said she was willing to enter an in-patient program, and that she wanted the minors placed with her in the in-patient facility. There was an unidentified woman present, and she appeared to be staying in the home. The minors were detained and released to Denise B. Father had no objection. George agreed that he would not reside with Denise B. while she had custody.

The Department filed a petition pursuant to section 387. It stated that the "previous disposition has not been effective in the protection of" the minors and that mother "has a history of illicit drug abuse and is a current abuser of cocaine[,] which renders [her] incapable of providing regular care for the [minors]. On [May 22, 2014], [mother] had a positive toxicology screen for cocaine. [Mother's] use of illicit drugs endangers the [minors'] physical health and safety and creates a detrimental home environment, placing the [minors] as risk of" harm. The petition recommended that the minors be placed with a relative.

At the June 3, 2014, detention hearing, the juvenile court found that there was substantial danger to the physical or emotional health of the minors, and there was no reasonable means to protect them without removal. The juvenile court ordered the minors detained with Denise B.

*The July 7, 2014, report and hearing*

In advance of the July 7, 2014, hearing, the Department submitted a report indicating that mother had tested positive for cocaine on May 2, 2014, May 7, 2014, May 22, 2014, and June 24, 2014. On May 30, 2014, and June 3, 2014, she was a no

---

[4] The Department learned of this dirty test in May 2014. It would learn in June 2014 that mother tested positive for cocaine on May 2, 2014, and May 7, 2014.

show for her drug tests. She had a clean test on June 13, 2014. Mother refused to enter an in-patient program because it would be an admission of guilt. Though she was participating in AADAP, she reported that she was not receiving individual therapy or mental health services.

Mother's AADAP counselor stated that mother "presently appears to be struggling with addiction." On July 2, 2014, mother was asked about her positive drug tests. She denied that she had been using drugs. She stated that she tested positive because her boyfriend was a user of cocaine and she had either touched him or had unprotected sex with him. Also, she said she had helped him "bag up cocaine" because he said he would pay her.

The Department's report averred that mother's "substance abuse seriously impairs her ability to provide and care for [the] children."

At the hearing, the juvenile court asked if there were issues regarding the allegations in the section 387 petition. Mother's counsel stated: "No. With regard to the [section] 387 issue, I'd like to put it all over." The juvenile court declined, stating, "I'm not putting it over. That's why I [send] cases on [section] 387 straight to trial. Normally there's no issues and there's no issues." At that point, the Department's counsel suggested that "we can do the [section] 387, then the parents can set the [section 366.21, subdivision (e)] for contest because that's what all of their issues are. They're all [section 366.21, subdivision (e)] issues. None of them have anything to do with the [section] 387 [petition]."

Mother's counsel said she was asking to put the matter over because mother was about to enter a sober living program.

The juvenile court stated: "Let's sustain the petition and move on then to dispo and a [section 366.21, subdivision (e) hearing] because both fathers are here . . . and . . . [¶] . . . [¶] Trailing. [¶] As is mother."

Mother's counsel indicated that mother disputed only one line in the section 387 petition. It alleged that mother was under the influence in the presence of the minors. Counsel stated that the line should be stricken, and that otherwise mother was submitting

8

on the documents. After marking certain reports for identification, the juvenile court ordered the one line stricken. The petition was sustained as amended. The juvenile court made a finding by a preponderance of the evidence that mother was "under the influence and incapable of taking care of" the minors. Then the juvenile court stated: "I'll put the matter over for dispo." A moment later, it stated that it was "going to suitably place the" minors.

Subsequently, the juvenile court said, "We'll set a contested [section 366.21, subdivision (e) hearing] as to all the parents and go over to [August 26, 2014]." The Department was given the discretion to release Elijah to father and to release Cherish to George.

Counsel for George asked whether the August 26, 2014, hearing would be for the section 366.21, subdivision (e) hearing and a disposition on the section 387 petition. The juvenile court replied: "No. It's his [section 366.21, subdivision (e) hearing.] Both fathers [section 366.21, subdivision (e)]."

*The August 26, 2014, report and hearing*

As reported by the Department, the minors were doing well in the custody of Denise B. Mother was consistently participating in the AADAP. The AADAP counselor reported that mother was "motivated and determined to reunify with her children." She had five clean drugs tests, she was attending three Narcotics Anonymous meetings per week, and she obtained a sponsor. She was receiving mental health counseling once a month, but she had not yet enrolled in individual therapy. According to mother, she intended to enroll in individual therapy, either through AADAP or Kedren. Mother was visiting the children twice a week. She appeared appropriate and sober. The Department recommended continued family reunification services for mother. It noted that she had remained in "constant contact" with the Department, and she was "actively participating in her programs and demonstrating progress." In its assessment, the Department stated that "the concerns that brought this case to the attention of the [Department] appear to be in the process of being resolved."

At the hearing, the juvenile court indicated that the matter was on calendar for a hearing under section 366.21, subdivision (e). It stated that because mother was in partial compliance with her case plan, the matter would be continued to January 2015 for a hearing under section 366.21, subdivision (f).

In response, mother's counsel stated: "She'd be requesting—since we did continue the dispo of the [section] 387 [petition], her request, today, would be return the [minors] to her care and that the [juvenile] court find by clear and convincing evidence there isn't a risk" if the minors are returned. In the alternative, counsel asked the juvenile court to grant unmonitored visitation.

The Department's counsel opined that the section 387 petition was fully resolved at the July 7, 2014, hearing because the juvenile court suitably placed the minors and set a section 366.21, subdivision (e) hearing for contest. Also, he opined that it would be a risk to liberalize mother's visits.

The juvenile court granted the Department discretion to liberalize and told mother "[w]e have to be cautious." She was told: "Make sure you are stable and clean and the Department will have continued discretion to liberalize." The matter was continued to January 6, 2015.

This timely appeal followed.

## DISCUSSION

Mother asserts the following: (1) the order sustaining the section 387 petition should be reversed because there was insufficient evidence that the allegations were true, and the prior disposition was ineffective to protect the minors; (2) the disposition order must be reversed because the juvenile court did not make the requisite findings, and substantial evidence does not support removal of the minors; and (3) the juvenile court abused its discretion by restricting mother to monitored visits with the minors. These assertions lack merit.

10

**I. The Section 387 Petition.**

    A.  Applicable Law; Standard of Review.

        Pursuant to section 387, a county child welfare agency may file a supplemental petition to change or modify a previous order by removing a child from the physical custody of a parent. (§ 387, subd. (a).) "The supplemental petition . . . shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child[.]" (§ 387, subd. (b).)

        At the hearing on a section 387 petition, the juvenile court "determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child. [Citations.] If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate. [Citations.] A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists. [Citations.]" (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.)

        If the petition seeks removal of a child from a parent, the juvenile court "must apply one of the applicable standards found in section 361, subdivision (c)." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462.) Section 361, subdivision (c) provides that a "dependent child shall not be taken from the physical custody of . . . a parent . . . unless the juvenile court finds by clear and convincing evidence" that, inter alia, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

        We review the juvenile court's findings for substantial evidence. (I*n re T.W.*, *supra*, 214 Cal.App.4th at p. 1161.) "Evidence is '"[s]ubstantial"' if it is '""reasonable, credible, and of solid value.""' [Citation.] We do not pass on the credibility of witnesses,

11

attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding. [Citations.]" (*Id*. at pp. 1161–1162.)

B. Invited Error.

At the July 7, 2014, hearing, mother's counsel stated that there were no issues regarding the allegations in the section 387 petition. The juvenile court parroted that there were no issues, and stated that it wanted to sustain the petition. Mother said her sole dispute was with the allegation that she was under the influence in the presence of the minors. The juvenile court excised that sentence from the petition. It went on to sustain the petition as amended, and then stated that it was going to suitably place the minors. Mother had no objection. Because mother said that the allegations were undisputed except for a single sentence, she induced the juvenile court to rule without considering evidence or argument and is therefore barred from complaining about the juvenile court's decision by the invited error doctrine. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [if a party induces the commission of error, she is estopped from asserting it is grounds for reversal].)

According to mother, the invited error doctrine has no application here because the remarks by mother's counsel in advance of the actual adjudication were merely precatory and therefore did not constitute a concession that the evidence supported any findings under section 387.

It is true, as mother points out, that a party can submit on a matter without waiving a challenge to the sufficiency of the evidence. Pivotally, mother's counsel did more than simply submit. By saying there were no issues regarding the petition except for one allegation, she affirmatively did not dispute the following allegations: "The previous disposition has not been effective in the protection" of the minors, and mother's "use of illicit drugs endangers the [minors'] physical health and safety and creates a detrimental home environment, placing the [minors] as risk of" harm. As a practical matter, the recommended placement with a relative was an allegation that there would be a

12

substantial danger to the safety or well-being of the minors if returned home.  That also was not disputed.

C.  <u>Section 387 Rulings Supported By Substantial Evidence</u>.

As indicated above, mother cannot complain about the juvenile court's ruling at the section 387 hearing.  Nonetheless, to be complete, we have analyzed mother's arguments and find they lack merit.

The record established that Elijah was six years old and Cherish was three years old at the time of the July 7, 2014, hearing in which they were ordered suitably placed.  The record additionally disclosed, inter alia, mother's history of mental health problems, her four positive drug tests, her two no show drug tests, her inability to fully comply with her prescribed programs until after the minors were detained from her custody, the dirty and unkempt state of her home in late May, the AADAP counselor's opinion that mother was struggling with addiction, mother's repeated denial of her substance abuse problems, and mother's admission that she was dating a cocaine user and helping him "bag up cocaine."  In light of the tender age of her children, mother's unresolved substance abuse problems was, by itself, a sufficient basis for removal.  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [when a child is six years old or younger, a parent's substance abuse establishes jurisdiction under § 300, subd. (b) and grounds for removal of the child under § 361, subd. (c)]; § 300.2 ["[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of" children].)  Mother's other problems bolster our conclusion that the trial court did not err.

Mother cites *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727–728, *In re Destiny S.* (2012) 210 Cal.App.4th, 999, 1002–1005, *In re Rocco M.* (1991) 1 Cal.App.4th 814, 817, 825–826 and other cases for the proposition that mere drug use does not bring a child within section 300, subdivision (b).  Also, we are urged by mother to compare this case to *In re Paul E.* (1995) 39 Cal.App.4th 996 (*In re Paul E.*).  In that case, the court held that "mere chronic messiness in housekeeping, absent unsanitary conditions or resulting illness or accident, is not the clear and convincing evidence of a

substantial risk of harm to a child which may justify a child's removal from his or her parents under section 361." (*In re Paul E.*, *supra*, at p. 999.) The court also held that "the failure of . . . parents to comply completely with the service plan" does not by itself justify removal under section 361. (*In re Paul E.*, *supra*, at p. 999.) Mother's case is distinguishable from the foregoing cases because it involves a parent of young children with a substance abuse problem.

The next issue is whether the juvenile court made the required detriment finding under section 361, subdivision (c).

As mother points out, the juvenile court did not expressly make a section 361, subdivision (c) finding, i.e., it did not find that there was clear and convincing evidence that mother's continued custody of the minors posed a substantial danger of specified harm. But when a juvenile court does not articulate the standard that it applied, we presume that it applied the correct standard unless there is an indication to the contrary. (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 254 [the trial court did not articulate whether it was applying a preponderance or clear and convincing standard when it terminated a legal guardianship].) On this record, there is no indication that the juvenile court failed to apply the correct standard.

Pursuant to *In re Henry V.* (2004) 119 Cal.App.4th 522, 530 (*Henry V.*), mother urges us to refrain from implying the required finding of detriment. We are not persuaded. *Henry V.* held that there was insufficient evidence to support removal of a child, and that it was impossible to determine whether the juvenile court applied the clear and convincing standard to its dispositional findings. (*Id.* at p. 525.) *Henry V.* did not weigh in on when it is appropriate to imply findings, and cases are not authority for propositions not considered. (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 640.)

## II. No Abuse of Discretion in the Visitation Order.

Visitation orders are reviewed for an abuse of discretion. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) Given that there was evidence that mother is an abuser of cocaine, and that her treatment is ongoing, we cannot conclude that the juvenile court's

order restricting mother to monitored visitation exceeds the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

## DISPOSITION

The orders and findings are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
           ASHMANN-GERST


We concur:


_____, P. J.
   BOREN


_____, J.
    CHAVEZ