185 Cal.App.4th 103 (2010)
109 Cal. Rptr. 3d 899
In re A.O., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
AARON O., Defendant and Appellant.
No. B218741.
Court of Appeals of California, Second District, Division One.
May 28, 2010.
*105 Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.
Robert E. Kalunian, Acting County Counsel, Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and Byron G. Shibata, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
MALLANO, P. J. 
Aaron O. (Father) appeals from an order on a supplemental petition (Welf. & Inst. Code, § 387)[1] terminating a home of parent order and removing his daughter A.O. from his care after his arrest and incarceration and placing A.O. with Father's wife (Stepmother) in the same house in which A.O. had been living with Father and Stepmother before Father's arrest. We affirm the order sustaining the section 387 petition because substantial evidence supports the juvenile court's finding that the previous home of parent order was no longer effective to protect A.O. We also hold that a basis to avoid the assertion of dependency court jurisdiction over a child under section 300, subdivision (g)the incarcerated parent's making an appropriate arrangement for the care of the child by a relative or friendis inapplicable to a supplemental petition under section 387 because section 300, subdivision (g) deals with the initial imposition of dependency *106 court jurisdiction over a child, which is not at issue on a section 387 petition to terminate a home of parent order.[2]

BACKGROUND
Until he was incarcerated in 2007, Father provided financial support for A.O.'s older sister, J.O. (born in 1993),[3] and A.O. (born in 1995). A.O. lived with Father until May 1996. In 2007, the children were living with Joy M. (Mother) and her husband in Las Vegas, Nevada. In an August 2007 visit to the paternal grandmother in Los Angeles, the children disclosed to the paternal grandmother that they had been sexually abused by their maternal stepgrandfather in Nevada. The children were detained by the Los Angeles County Department of Children and Family Services (DCFS) and placed first in foster care and then with a maternal cousin. At the time of the detention hearing in August 2007, Father was incarcerated in the county jail, but he attended the hearing and was afforded monitored visits with the children while in local custody. Stepmother was allowed to transport the children and monitor their visits with Father.
In October 2007, the juvenile court sustained a petition declaring the children dependents of the juvenile court pursuant to section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (d) (sexual abuse), based on their sexual abuse by the maternal stepgrandfather, Mother's knowledge of the sexual abuse and failure to take action to protect the children, and Mother's beating of J.O. when J.O. disclosed the sexual abuse to her. The children were removed from parental custody and placed in the custody of DCFS for suitable placement; they remained placed with the maternal cousin. Although Mother was afforded reunification services, she did not visit the children or appear in court during the proceedings below, so her reunification services were terminated in November 2008; Mother sporadically had telephone contact with her children.
The juvenile court dismissed with prejudice all allegations in the petition against Father, who was afforded family reunification services and monitored visitation once a week, with Stepmother as the monitor.[4] Because Father was to be incarcerated at the state prison in Chino, the juvenile court did not order him to attend any programs. At the jurisdictional and dispositional hearing, *107 Father testified that while he was incarcerated, he had made arrangements with Stepmother to provide the children with clothes, food, and whatever they needed, and Stepmother did so. He was bonded to his daughters and they wanted to be back in his custody. The court stated that because Father was nonoffending, he should be considered for placement after his release from custody and request for custody.
In August 2008, Father was paroled from prison. In September 2008, both children were placed in Father and Stepmother's home for an extended visit. Because of J.O.'s disruptive behavior, she was removed from Father's home and placed at Rosemary Children's Services, a group home. In its October 2008 status review report, DCFS noted that Father was willing to participate in any program to help him deal with his children's behavioral problems and that he was able to provide a stable home for them. In a November 2008 interim review report, DCFS reported that A.O. was doing well in Father's home and that Father recently began parenting classes to help him deal with parenting a teenager. On November 21, 2008, the juvenile court ordered A.O. placed with Father under DCFS supervision and with family maintenance services.
A May 2009 status review report stated that there were no incidents of abuse or neglect of A.O., but Father was experiencing housing and financial difficulties. A.O. was not certain whether she wanted to live with Father because of an isolated incident when Father raised his voice to her during a visit with J.O., who Father believed was a bad influence on A.O. DCFS reported that the family was compliant with family preservation services, including in-home counseling. Father had contacted a mental health agency for services for A.O., but the agency had not responded.
On June 7, 2009, Father was with some of his friends when he was arrested for burglary and violating parole. Stepmother and A.O. were at Stepmother's sister's house when Father was arrested. The maternal grandmother notified DCFS of Father's arrest on June 10, 2009. Stepmother wanted to continue to care for A.O. and signed an affidavit stating so and also agreeing to comply with requests by DCFS and all court orders.
On June 23, 2009, DCFS filed a supplemental petition under section 387 alleging that the previous disposition for A.O. had not been effective for her protection because Father "is unable to provide the child with ongoing care and supervision in that on 6/7/09, the father was incarcerated for burglary and violation of parole and is currently incarcerated. The father's inability to provide the child with ongoing care and supervision endangers the child's physical and emotional health and safety and places the child at risk of physical and emotional harm and damage." The petition noted that A.O. was *108 detained on June 18, 2009, and placed with her Stepmother in the same home where A.O. had been residing with Father and Stepmother.
According to the July 6, 2009 jurisdiction/disposition report for the supplemental petition, Father "has a history of illicit drug use including criminal history of convictions for drug-related offenses which impaired his ability to provide the minor with regular care. Further, father's poor judgment as to violating parole endangers the minor's physical safety and emotional well being and creates a detrimental home environment." A.O. told DCFS that she wanted to remain in Stepmother's care, but if she is moved, she would like to live with the maternal grandmother or close to her in Pomona. Stepmother told DCFS that she was willing to do whatever was necessary for A.O. to remain in her care. A June 26, 2009 progress report from the in-home counseling agency reported that the family had been participating consistently in the program until May 2009, when Father missed all four weekly counseling sessions; the agency reported that services would be terminated due to noncompliance.
After an August 27, 2009 hearing, the juvenile court sustained the supplemental petition, removed A.O. from Father's custody, and ordered her suitably placed with Stepmother. The juvenile court found by clear and convincing evidence that a substantial danger existed to A.O.'s physical health and she was suffering severe emotional damage and there was no reasonable means to protect her without removal from Father.
The juvenile court rejected the request of Father's and A.O.'s counsel to dismiss the supplemental petition on the ground that Father had made an appropriate plan for A.O. to reside with Stepmother. Father's counsel argued that he was entitled to oppose the section 387 petition on the same grounds as if the petition had been filed under section 300, subdivision (g).
In sustaining the petition, the juvenile court explained: "If the father had been arrested and had made a plan that was appropriate, I think that would be a different situation than what we have now. [¶] ... [¶] Based upon the evidence that I have, I don't know if the father spoke to the stepmother about caring for the child, but the department got an affidavit from the stepmother saying the stepmother would care for the child, make sure she was in school, and take care of her in an appropriate fashion. [¶] I think this is different. I think the father put himself in a position. This was an HOP father [(home of parent order)]. So for me now to find that he made an appropriate plan based upon himself getting arrested for burglaryhe does have a long criminal historythat essentially, I would be keeping a home-of-parent father order. And I don't think that's appropriate at this point in time. [¶] And so I'm going to sustain the [supplemental petition]. I don't agree with [Father's *109 counsel] and [A.O.'s counsel] with respect to their analysis of the law and how I should apply the law with respect to the 387 [petition]. So I am sustaining this."
On appeal from the order sustaining the supplemental petition, Father challenges the sufficiency of the evidence. He argues that because he had made an appropriate plan for care for A.O. by Stepmother and A.O. remained in the same house in which she had been living before his incarceration, there was insufficient evidence to support the finding that the previous disposition was no longer effective in protecting A.O.

DISCUSSION
We review an order sustaining a section 387 petition for substantial evidence. (In re A.O. (2004) 120 Cal.App.4th 1054, 1061 [16 Cal.Rptr.3d 117].)
Section 387 provides in pertinent part: "(a) An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution, shall be made only after noticed hearing upon a supplemental petition. [¶] (b) The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3."[5]
(1) Under section 387, DCFS may bring a supplemental petition for an order changing or modifying a previous order by removing a child from the physical custody of a parent. (§ 387, subd. (a).) "A section 387 petition is ordinarily required when the petitioner ... seeks to modify a dispositional order by establishing the need for a `more restrictive level' of custody." (In re Jonique W. (1994) 26 Cal.App.4th 685, 690 [31 Cal.Rptr.2d 601] (Jonique W.).) DCFS "has the burden to show by a preponderance of the *110 evidence that the factual allegations alleged in the petition are true. If the court finds the factual allegations are true, then the court determines whether the previous disposition is no longer effective in protecting the child ...." (In re H.G. (2006) 146 Cal.App.4th 1, 11 [52 Cal.Rptr.3d 364].)
(2) Under California Rules of Court, rule 5.565(e)(1), a hearing on a supplemental petition is potentially a two-phase proceeding. "In the first phase of a section 387 proceeding, the court must follow the procedures relating to a jurisdictional hearing on a section 300 petition .... [Citation.] At the conclusion of this so-called `jurisdictional phase' of the section 387 hearing [citation], the juvenile court is required to make findings whether: (1) the factual allegations of the supplemental petition are or are not true; and (2) the allegation that the previous disposition has not been effective in protecting the child is, or is not, true. (Rule [5.565(e)(1)].) If both allegations are found to be true, a separate `dispositional' hearing must be conducted under the procedures applicable to the original disposition hearing ...." (Jonique W., supra, 26 Cal.App.4th at p. 691.) "The ultimate `jurisdictional fact' necessary to modify a previous placement with a parent or relative is that the previous disposition has not been effective in the protection of the minor." (Ibid.)
(3) Father does not provide any authority to support the proposition that section 300, subdivision (g) is applicable here. The purpose of section 300 is "to identify those children over whom the juvenile court may exercise its jurisdiction and adjudge dependents." (In re Joel H. (1993) 19 Cal.App.4th 1185, 1200 [23 Cal.Rptr.2d 878].) "Obviously, when, as in the present case, there is a supplemental petition, there already exists a basis for juvenile court jurisdiction. The law does not require that a fact necessary to establish jurisdiction under section 300 be established to warrant a change in placement." (Ibid.; see also Kimberly R. v. Superior Court (2002) 96 Cal.App.4th 1067, 1077 [117 Cal.Rptr.2d 670] (Kimberly R.) ["Unlike an original petition, a section 387 supplemental petition does not affect the jurisdiction of the court."].) And it has been noted that "once the juvenile court has taken jurisdiction over a child, that court has greater statutory authority than a family law court to intervene in the decisionmaking of a custodial parent even a nonoffending onein order to protect a child's physical safety and emotional well-being." (In re Isayah C. (2004) 118 Cal.App.4th 684, 697 [13 Cal.Rptr.3d 198].)
Here, the facts are undisputed and provide substantial evidence that the previous order placing A.O. with Father was no longer effective for her protection. A.O. came under the jurisdiction of the juvenile court at the time of the jurisdictional order in October 2007 and remained under such jurisdiction throughout the proceedings below. At the dispositional hearing, she was *111 placed in the care of DCFS for suitable placement and placed with the maternal cousin, which Father did not, and does not, challenge. In November 2008, the court ordered that DCFS place A.O. with Father under DCFS's supervision. Thus Father was granted only temporary physical custody over A.O. in November 2008. Accordingly, although A.O. was placed with Father, Father did not have legal custody over A.O. and had no authority to make decisions regarding her placement. When Father was arrested and incarcerated in June 2009, he was no longer able to care for A.O. Substantial evidence supports the finding that the previous order placing A.O. with Father was no longer effective for her protection.
Although it is commendable that Stepmother, as a member of Father's household, cared for A.O. with the approval of DCFS, the court had not previously ordered A.O. placed with Stepmother and had not granted Father sole legal and physical custody over A.O. so as to afford him the authority to make plans for her care in the event that he was unable to care for her. Therefore, whether or not Father was able to arrange for A.O. to be cared for by Stepmother upon his arrest in 2009 was irrelevant to the proceedings on the supplemental petition.
Fortunately for Father, DCFS agreed with him that, after his incarceration in June 2009, Stepmother was a suitable caretaker for A.O. An appropriate procedural vehicle to place A.O. with Stepmother was for DCFS to file a supplemental petition to terminate the home of parent order and to obtain a court order directing DCFS to place A.O. with Stepmother, which is what occurred.
Father challenges the sufficiency of the evidence supporting the removal order made upon the "disposition" phase of the hearing on the section 387 petition. Citing Kimberly R., supra, 96 Cal.App.4th 1067, and In re Paul E. (1995) 39 Cal.App.4th 996 [46 Cal.Rptr.2d 289] (Paul E.), Father maintains that the standard for removal of a child from parental custody on a section 387 petition is the same for removal on an original petition under section 300 (that is, the standard set out in section 361, subdivision (c)). Father thus asserts that, as set out in section 361, subdivision (c)(1), clear and convincing evidence must show a risk of physical danger or that the child suffers severe emotional damage.
(4) Although the juvenile court in the instant case made findings, consistent with section 361, subdivision (c)(1), that clear and convincing evidence established a substantial danger of physical harm, section 387 does not expressly require application of section 361, subdivision (c)(1). And Paul E. also is inapplicable here because the issue addressed in Paul E. was whether section 361 applies to the "disposition" phase of a hearing on a section 387 *112 petition when the child was not removed from the parental home when the juvenile court initially established dependency jurisdiction under section 300. (Paul E., supra, 39 Cal.App.4th at pp. 999-1000.) Under that circumstance, the court in Paul E. reasoned that "[s]ince a supplemental petition is not a `new' adjudication of dependency, the same protections which govern the removal of a child from parental custody the first time around should remain in effect. Otherwise those protections could be circumvented by allowing the child to remain in the home under the initial petition and later filing a supplemental one." (Id. at p. 1002.) Because there is no question that a determination under section 361, subdivision (c)(1) was made in this case when A.O. was initially removed from parental custody at the disposition hearing in October 2007, Paul E. is inapposite.
The court in Kimberly R., citing Paul E., applied the removal standard of section 361, subdivision (c)(1) on review of an order sustaining a supplemental petition and the removal of the child. But it is unclear from the opinion in Kimberly R. whether there was a prior determination of substantial risk of harm under section 361, subdivision (c)(1), because the order on review was one sustaining a second supplemental petition. In Kimberly R., the child was declared a dependent under section 300, subdivision (b), but remained in the mother's physical custody; in 1999 the child was removed from her custody on a supplemental petition and placed with a relative but then returned to the mother's custody; in 2001 the agency filed a second supplemental petition, which the court sustained, removing the child from the mother's custody. A petition for a writ of mandate was filed as to the second order of removal. Because it cannot be determined that the juvenile court in Kimberly R. applied section 361, subdivision (c)(1) at the hearing on the 1999 supplemental petition, Kimberly R. cannot stand for the proposition that section 361, subdivision (c)(1) always must apply at the "disposition" phase of a hearing on a section 387 petition.
(5) Assuming for purposes of argument that the juvenile court here was required to apply the standards of section 361, subdivision (c)(1) at the "disposition" phase of the hearing on the section 387 petition, the record shows that the court did so. We conclude that substantial evidence supports the finding that A.O. was at substantial risk of physical danger because the parent with whom she was placed was incarcerated and was no longer able to care for her.
We affirm the order sustaining the supplemental petition and removing A.O. from Father because he fails to establish any error or that the order was not supported by substantial evidence.

*113 DISPOSITION
The order is affirmed.
Chaney, J., and Johnson, J., concurred.
NOTES
[1] Unspecified statutory references are to the Welfare and Institutions Code.
[2] Among other grounds, section 300, subdivision (g) permits juvenile court jurisdiction over a child when "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child."
[3] J.O. is not a subject of this appeal.
[4] Dismissed from the petition were allegations under section 300, subdivisions (b) and (g) (no provision for support) that Father's whereabouts were unknown and that he failed to provide his children with the necessities of life.
[5] Section 361.3 contains what is known as relative preference provisions, affording preferential consideration for placement with a relative when a child is removed from parental custody. Section 361.3, subdivision (a) contains a list of factors the agency and the court must consider in placing a child with a relative, including the best interest of the child; the wishes of the parent, the relative, and child, if appropriate; the good moral character of the relative; the nature of the relationship between the child and the relative; and the ability of the relative to provide a secure, safe home, to protect the child, and to facilitate court-ordered reunification efforts and visitation.