Filed 6/10/16  R.A. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.A.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN BERNARDINO COUNTY,<br><br>        Respondent;<br><br>SAN BERNARDINO COUNTY<br>CHILDREN AND FAMILY SERVICES,<br><br>        Real Party in Interest. | E065616<br><br>(Super.Ct.No. J258084)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Christopher B. Marshall, Judge.  Petition denied.

Law Offices of Vincent W. Davis & Associates and Stephanie M. Davis for Petitioner.

No appearance for Respondent.

1

Jean-Rene Basle, County Counsel, Jamila Bayati, Deputy County Counsel, for Real Party in Interest.

Petitioner R.A. (father) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order removing his son, E.B. (the child), under a Welfare and Institutions Code[1] section 387 petition, terminating reunification services, and setting a section 366.26 hearing. Father contends: (1) there was no clear and convincing evidence to justify the removal of the child from his custody; (2) the court erred in finding there was no substantial probability of returning the child to his custody and failing to order additional reunification services; and (3) the court erred in finding that he had been offered reasonable reunification services at the 12-month review hearing. Father requests a temporary stay of the section 366.26 hearing, pending the granting or denial of his writ petition. We deny the request for a stay and also deny his writ petition.

FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 2014, the San Bernardino County Children and Family Services (CFS) filed a section 300 petition on behalf of the child, who was a newborn. The petition alleged that the child came within the provisions of subdivisions (b) (failure to protect) and (g) (no provision for support). Specifically, the petition alleged that the

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

child's mother, J.B. (mother)[2] had a history of substance abuse and a history of domestic violence, and that father knew or reasonably should have known about the abuse and/or neglect of the child. The petition also alleged that father's whereabouts and his ability and willingness to care for the child were unknown.

The social worker filed a detention report and stated that the child tested positive at birth for methamphetamines. Mother also tested positive. Mother admitted that she had used methamphetamines for the past 12 years, and that she last used on December 25, 2014. She said that she had never had drug treatment, and when she found out she was pregnant, she did not receive prenatal care. Mother identified father as the child's father.

The court held a detention hearing on January 2, 2015, and detained the child in foster care. There was a relative willing to provide a temporary home, and the court authorized the social worker to do a home assessment.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on January 20, 2015, recommending that the court sustain the petition and order reunification services for mother, but deny them to father. Father's whereabouts were still unknown. The social worker did report that father was married to another woman and had two adult children. Mother stated that her relationship with father began as a one night stand. When he found out about the child's birth, father contacted mother and told her he believed every

---

[2] Mother is not a party to this writ.

3

child needed a father, and he wanted to be that for the child. The social worker noted that father was not listed on the birth certificate, that he was only an alleged father, and that he would need to establish paternity in order to receive services.

The court held a jurisdiction/disposition hearing on January 23, 2015, and father appeared. Mother said she advised father that she was pregnant when she found out, but then left it up to him whether he wanted to be in the child's life. The court ordered paternity testing and set the matter contested, at father's request.

DNA testing revealed that father was the child's biological father. The social worker subsequently met with him to go over his case plan. She referred him to a parenting class and individual counseling. Father was cooperative and indicated he wanted counseling, but felt that he did not need a parenting program, since he had raised two children who were now adults. Father said he did not have a stable place to raise the child, but he planned on getting a house within the next few months. He said he owned his own business. Father began visiting the child, along with mother. The social worker felt that he appeared very motivated to gain custody of the child, so she recommended that visits be unsupervised, twice a week.

The court held a contested jurisdiction/disposition hearing on February 24, 2015. The court found defendant to be a presumed father. Father then submitted on the petition and waived his rights. The court sustained the petition, except that it dismissed the allegation that father's whereabouts and willingness to care for the child were unknown. The court declared the child a dependent, removed him from the parents' custody, and placed him in the care of CFS. The court ordered both parents to participate in

4

reunification services. Father requested the court to strike the parenting program requirement, which the court did. The court also advised the parents that services would not exceed six months, because of the child's age, unless it found a substantial probability that the child would be returned to their custody within an extended time period, not to exceed 18 months. The social worker recommended supervised visitation. The court modified the order to state "overnights, weekends, or return by approval packet of either parent."

*Six-month Status Review*

The social worker filed a six-month status review report on August 19, 2015. The report stated that father had not stayed in contact with the social worker. She repeatedly called him and left messages, to no avail. Furthermore, father had not provided the social worker an address for his place of residence. He did, however, attend 12 sessions of individual therapy. The court had ordered visits twice per week, and father visited approximately four times. The foster parent reported that father did not attend any visits after June 14, 2015.

The court held a six-month review hearing on August 24, 2015. Father's counsel asked the court to set the matter contested. She stated that father had completed his counseling program. She further noted that, at the last hearing, the court ordered father to have unsupervised visits; however, he had been having supervised visits. Thus, she was asking for "makeup [unsupervised] visits" There was some confusion over whether the visits were ordered to be supervised or unsupervised. The court then stated, "The visits are now deemed unsupervised for Father. Let's move on from there." The court said it

wanted to return the child, if father had completed his case plan. However, county counsel informed the court that father had an active restraining order from his ex-wife and had to do a batterer's program. Moreover, father had not provided the social worker with his residence address. The court asked father his address. Father replied and said he just moved there last week. The court set the matter for trial for September 3, 2015, and ordered the social worker to assess father's home and make a recommendation regarding return to him.

The social worker filed additional information with the court and reported that she met with mother and father on August 24, 2015. Father said he planned to use the maternal grandmother as a babysitter, and paperwork was provided for the live scan. The social worker did not recommend that the child be returned to father's care, as he had had limited contact with the child and the social worker. She recommended that the court continue services and day visits, and then advance to overnight visits, in order to establish father's ability to care for the child.

The court held a contested six-month review hearing on September 3, 2015. At the outset, father's counsel argued that father had received unreasonable services. She argued that, as of February 24, 2015, the visits were supposed to be unsupervised, twice per week, and that the social worker was authorized to liberalize them. However, the social worker allowed the visits to be supervised, and she did not liberalize them. Father's counsel asked the court for unsupervised overnight visits and weekends to start immediately. The court noted that the previous court's minute order clearly stated that the visits were to be supervised, and that the judge's handwritten notes also indicated that

supervised visits were intended. The court further found that the failure to liberalize visits did not constitute unreasonable services, since the evidence did not show that father actually visited the child. Moreover, the court noted that father just got a home in late August. It did not think it was wise to do overnight visits yet, but ordered unsupervised visits for 8 to 12 hours a day on weekends for two weeks, in order to allow father time to bond with the child. The court wanted to then have a hearing to see if they should transition to overnight visits on the weekends.

*Appearance Review*

The social worker filed additional information for the court on September 18, 2015. She reported that father had extended day visits with the child on September 5, 2015, September 6, 2015, and September 7, 2015. The foster parent reported that the child returned with diarrhea, slight diaper rash, and a cold. The foster mother took the child to the doctor. The child was given prescription eye drops because he had conjunctivitis. Father was informed about the diarrhea and eye issue.

On September 12, 2015, the social worker made an unannounced visit to father's home and found a woman in the home with a baby. Father introduced her as a friend. He reported that things were going well and that he had put the child's eye drops in without any problems. After the visit, the foster care mother noticed that more than half the eye drops were gone.

The court held an appearance review hearing on September 18, 2015. The court indicated that it was going to extend visits for another two more weeks. The court noted that it sounded like father needed a little more help learning to tend to the child and cited

7

giving the child too many eye drops as an example. County counsel asked that father not leave the child alone with his female friend who was in his home and that if she was going to have substantial contact with the child, she needed to be live scanned. The court ordered mother's visits to be supervised at the CFS office. County counsel thus asked that mother not visit the child at father's home and that father not supervise mother's visits. The court ordered that if father had guests in his house, they needed to be live scanned, and that he was not to supervise mother's visits. The court further addressed mother and told her she could not go to father's house when he had the child, and that she had to go to CFS to visit the child. The court added that if she violated that order, it would affect both her and father.

On October 23, 2015, the court placed the child in father's custody under a plan of family maintenance.

*Section 387 Petition*

On February 9, 2016, the social worker filed a section 387 supplemental petition alleging that father violated the court orders of not leaving the child alone in his home with the female that lived there and not allowing mother to have unsupervised visits with the child. The petition also alleged that family maintenance services had failed in that father had not been protective of the child.

The social worker filed a detention report with the section 387 petition. She reported that she spoke with father on February 5, 2016, and he said the child was at the maternal grandmother's (MGM) house, since he was at work. The social worker made an unannounced visit to mother's residence. Mother appeared to be under the influence and

8

stated that she wanted to get back into treatment and get help for domestic violence. Mother talked at length about the child being in her home, playing in the yard, and almost eating dog "poop." She also talked about how the child would pull the cell phone charger out of the wall, and how the child took his bottle at night before bedtime. She talked about sleeping with the child in her bed. She also said father routinely dropped off and picked up the child at/from her house. The social worker talked to Ethel, the owner of the residence where mother lived, and she confirmed that the child spent a lot of time at the house.

The social worker then went to the MGM's home, and she said the child was not at her house, but was with father. She also confirmed that father would drop the child off at mother's house. The MGM said she had no concerns about the child being with mother alone, since she thought mother was "an excellent mother."

The social worker next made an unannounced visit to father's home on February 5, 2016. A woman was in the home caring for the child. She had been seen at the house on at least two other occasions. The social worker reported that there was a court order that the woman could not babysit the child. The woman stated that father was on his way home. When father arrived, he said he was not comfortable having the child go to the MGM's house because it was not very clean. He admitted he said the child was with the MGM that day, even though the child was actually at his home. Father said he thought the MGM was going to come over soon after he left. Regarding mother, he said he was aware that she was actively using drugs. The social worker was concerned because, although father knew mother was only to have supervised day visits, he was allowing her

9

to have unsupervised and overnight visits. Moreover, she was still actively using drugs. Father was also allowing a woman to care for the child, even though there was a court order specifying that she was not supposed to. The social worker recommended the court find that the previous disposition of maintaining the child in father's custody had not been effective in the protection of the child.

At a hearing on February 10, 2016, the court found that the previous disposition had not been effective in the protection of the child. It further found that continuance of the child in father's home was contrary to the child's welfare, as there was a substantial danger to his physical health or the child was suffering emotional damage, and there was no reasonable means to protect him without removing him from father's physical custody. The court ordered the child detained and placed him in foster care. The court ordered supervised visitation once a week, with unsupervised visits for father by approval packet. The court then set the jurisdiction/disposition hearing for March 2, 2016, combined with a 12-month review hearing set for that date.

*Jurisdiction/Disposition/12-month Review*

The social worker filed a report on February 29, 2016, recommending that the court remove the child from father, no services be provided to father, mother's services be terminated, and a section 366.26 hearing be set. The social worker stated that father was well aware of the court's orders and the visitation schedule, yet he allowed mother to have unsupervised and overnight visits with the child. He knew mother was actively using drugs. He also knew there was a court order not allowing women to care for the child in his home, except for the MGM. He allowed the child to be cared for in his home

10

by someone who had not been fingerprinted and whom the court had ordered not to care for the child. The social worker stated that father had not been forthright with her regarding the whereabouts of the child and who was caring for him. He showed a lack of regard for following court orders given to protect the child. The social worker stated that there were no services that could be rendered to assist father in following the court orders. She also noted that this was the second time the child had been removed from his care.

The court held a contested jurisdiction/disposition hearing on the section 387 petition on March 17, 2016. Father testified at the hearing. He testified that he recalled the court ordering mother not to visit the child at his home and that he was not authorized to supervise mother's visits. He then admitted that, since he had the child returned to his care in October, he had taken the child to mother's house twice. Father further testified that he used the MGM as a babysitter, but he did not feel her house was appropriate for the child. He said he never dropped the child off at the MGM's house knowing that she would take the child to mother. Father admitted that he knew mother was still actively using drugs. He also admitted that the court ordered him to drug test on February 10, 2016 and March 2, 2016, but he did not test on either day. When asked about the woman who was in his home caring for the child, father said she was a friend whom he used as a babysitter, but she did not live in his home. Father said he was aware of the court's order that anyone who was going to have substantial contact with the child had to be live scanned; however, he had not asked for his friend to be live scanned until that week. Father then agreed that he violated the court's orders to not leave the child home alone

11

with mother and to not leave the child with someone who had not been live scanned. However, he disagreed with the assertion that he was not being protective of the child by leaving the child with mother, even knowing that she was actively using drugs. In addition, father admitted that he lied to the social worker on February 5, 2016, when she asked him where the child was, and he said the child was with the MGM. He said she "caught him off guard," and he also thought his case had already been closed. He claimed that the social worker told him his case was closed, but the paperwork had just not been processed yet. He also said he lied because he did not want to get anyone in trouble.

The social worker testified at the hearing, as well. She said she did tell the father she was considering closing the case. However, she also told him it was not closed yet, and he still had to follow the rules. She specifically reminded him every time she talked to him that mother's visits with the child had to be supervised. Furthermore, the social worker testified that she believed the child would be at risk if placed with father. She said father completed the therapy the court ordered, but said he did not need parenting classes. The social worker was concerned because, even after completing his counseling, father turned around and violated the court orders by allowing mother to have unsupervised visits with the child. The social worker said she did not see how doing more therapy or a parenting class now would change the risk of father giving the child to mother to spend extended periods of time. The social worker also testified that she saw father's friend babysitting the child in his home three times, in August 2015, November 2015, and February 2016. In December 2015, she specifically reminded father that only

people who had been live canned could babysit the child. The social worker further testified that she learned from the foster mother that the child had overnight visits with mother. The social worker also said she interviewed mother, who talked about activities in her home she would do with the child, including that the child would sleep with her.

After hearing the testimonies and closing arguments, the court first made its jurisdiction finding. It found the allegations in the section 387 petition to be true and thus found that the child came within section 387. Turning to the disposition, the court stated that the issue was the protection and safety of the child. The court first found that mother was still battling her drug addiction and that there would be a substantial risk of harm returning the child to her. As to father, the court stated that, although father testified that he left the child with mother only two times, it believed that he left the child with her more than that. The court noted that, whether father believed the MGM was on her way to watch the child, he still left the child with mother when he knew she was battling drug addiction. The court stated that such circumstances created a significant issue of safety for the child. The court further noted that the previous court ordered father not to supervise mother's visits and that he was not to leave the child alone at home with the woman whom the social worker identified as his friend who had not been live scanned. The issue was that father violated the court's orders. Moreover, father understood the importance of the appropriate people watching the child; thus, he lied about the child being with the maternal grandmother on February 5, when the child was actually with someone else. The court inferred that father lied because he knew the arrangement was not right. The court was concerned that father's violations of the court's orders exposed

13

the child to potential danger, when the child's safety and protection should have been paramount. The court did not believe the social worker ever told father the case was closed, as father claimed. The court believed that the social worker told father that, even if the case was being closed, the visits with mother needed to be supervised, in light of her drug addiction. The court further stated that the supplemental section 387 petition was based on the same issues in the original petition—father's ability to protect the child and mother's substance abuse. Thus, the court found that the previous disposition had not been effective in the rehabilitation or protection of the child. The court further found that continuance of the child in father's custody would be contrary to the child's welfare. The court found clear and convincing evidence that there was a substantial danger to the physical health, safety, and protection or physical and emotional well-being of the child if he was to be returned to father's custody. The court further found father had been provided with reasonable services and the extent of his progress toward alleviating the causes necessitating placement had been minimal. The court also found that there was not a substantial probability the child could be returned to father within the statutory time frames, in that he had not made significant progress in resolving the problems that led to the child's removal. The court ordered father's (and mother's) reunification services terminated and set a section 366.26 hearing for July 18, 2016.

14

I.  The Court Properly Sustained the Section 387 Petition and Removed the Child

From Father's Custody

Father argues that there was no clear and convincing evidence to justify the removal of the child from his custody.  He is essentially arguing that the court erred in sustaining the section 387 petition.  We disagree.

A. *Relevant Law*

"A section 387 supplemental petition is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care.  (§ 387; . . . .)  In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the previous disposition has been ineffective in protecting the child.  (§ 387, subd. (b) ; . . . .)  If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate.  (. . . ; *In re H.G.* (2006) 146 Cal.App.4th 1, 11 [*H.G.*].)  A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists.  [Citations.]  The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child.  [Citations.]"  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161 (*T.W.*).)

We note real party in interest's initial argument that the standard for removal of a child on a section 387 supplemental petition is a showing by a *preponderance of the*

*evidence* that the previous disposition has not been effective in protecting the child.  In support of its position, real party in interest cites *In re A.O.* (2010) 185 Cal.App.4th 103 (*A.O.*).  However, that case relies on *H.G.*, *supra*, 146 Cal.App.4th 1, in stating that the social service agency has the burden to show by a preponderance of the evidence that the factual allegations alleged in the section 387 petition are true.  (*A.O.*, at pp. 109-110.)  *H.G.* concerned the removal of a child from the custody of a *relative*, not a parent.  (*H.G.*, at p. 10.)  Thus, it is inapposite.  Rather, "[w]hen a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361.  [Citation.]  Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.'  (*T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

"We review an order sustaining a section 387 petition for substantial evidence." (*A.O.*, *supra*, 185 Cal.App.4th at p. 109; see also, *T.W.*, *supra*, 214 Cal.App.4th at p. 1161.)  "Evidence is '"[s]ubstantial"' if it is ""'reasonable, credible, and of solid value.'"" [Citation.]  We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence.  Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding.  [Citations.]  The appellant

16

has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order." (*T.W.*, *supra*, 214 Cal.App.4th at pp. 1161-1162.)

B. *The Evidence Was Sufficient*

Here, the supplemental petition alleged the court's previous order placing the child with father had been ineffective in protecting him because father violated the court order of leaving the child alone in his home with the female who had not been approved, and he allowed mother to have unsupervised visits with the child. The court sustained the petition and found clear and convincing evidence that there was a substantial danger to the physical health, safety, and protection or physical and emotional well-being of the child if he was to be returned to father's custody. The evidence supports the court's findings. Father claims that the only direct evidence of his wrongdoing was his admission that he lied to the social worker about the child's location and about not having the babysitter live scanned. Father misses the point. While it was wrong of him to lie to the social worker, the real problem was that he violated the court's orders that were meant to protect the child. He knew there was a court order that anyone that was going to have substantial contact with the child had to be live scanned. In other words, he knew his friend had not been live scanned, yet he allowed her to babysit the child. The social worker testified that she saw father's friend babysitting the child in his home three times, in August 2015, November 2015, and February 2016. He admitted that he violated the order not to leave the child with someone who had not been live scanned. Father also knew that mother was not to be left alone with the child, and that her visits were to be supervised by CFS. He testified that he took the child to mother's house and left him

17

with her twice. Moreover, he did so knowing that she was still actively using drugs. Furthermore, the evidence showed that the child had overnight visits with mother. The social worker interviewed mother, who talked about activities in the home she would do with the child, including that the child would sleep with her. Father admitted that he violated the court order of not leaving the child home alone with mother.

Father argues that the evidence showing that he allowed unsupervised visits between mother and the child was unreliable since it came from mother, the MGM, and the foster mother. However, father himself admitted that he took the child to mother's house and left him there twice. Moreover, the evidence showed that mother said father routinely dropped off and picked up the child at/from her house. The owner of the residence where mother lived also confirmed that the child spent a lot of time at the house. The social worker testified at the hearing regarding the information she received, indicating that mother was having overnight visits. The court clearly found that the social worker's testimony was credible, and we defer to this finding because we have no power to judge the effect, value, or weight of the evidence, consider the credibility of witnesses or resolve conflicts in the evidence. (*T.W.*, *supra*, 214 Cal.App.4th at p. 1162.)

Father attempts to justify his violations of the court's orders by claiming that it was "reasonable to assume that a layperson such as [himself] was confused" about the procedures and that he believed the case was terminated. He further asserts that he "was forthright in accepting responsibility for lying to the social worker." However, the social worker testified that she was very specific with father when she discussed the possibility of closing the case, and that he needed to still obey the court's orders. Moreover, as the

18

court remarked, father lied about the child being with the maternal grandmother on February 5, when he was with someone else, because he knew the arrangement was wrong.

Father also asserts that his actions "were not the most heinous nor did they cause the most potential risk," and, therefore, the court erred in failing to consider other reasonable means to protect the child without removing him from father's custody. According to the social worker, the child would be at risk if returned to father's custody. She noted that father had already completed his court-ordered therapy, and he had refused to take a parenting class. Yet, despite completing his therapy, father still gave the child to mother unsupervised, even knowing that she was using drugs. Father suggests that the court could have required him to attend additional counseling sessions or required him to use a licensed childcare facility for the child. However, father had already completed therapy, and these alternatives would not have done much to stop him from continuing to violate the court orders.

We conclude that substantial evidence supports the court's jurisdictional findings on the section 387 supplemental petition. Thus, the court properly removed the child from father's custody.

## II. The Court Did Not Abuse its Discretion By Failing to Offer Father More Reunification Services

Father contends that the court abused its discretion by failing to offer him additional reunification services when it removed the child at the section 387 hearing. Because there was no substantial probability the child would be returned to father's

19

custody within the statutory time period, the court properly declined to order more services.

"Whenever a minor is removed from parental custody, the juvenile court must, in the absence of certain specified exceptions, order the social worker to provide services to the parent for the purpose of facilitating reunification of the family. [Citations.] . . . To achieve this purpose, parents are generally entitled to 12 months of reunification services. However, under section 361.5, subdivision (a)(2), 'court-ordered services *shall not* exceed a period of six months' if the minor was under the age of three when removed from the physical custody of his or her parent. [Citation.] . . . Nevertheless, the court may extend the reunification period for a minor under the age of three up to 18 months if there is a substantial probability the minor will be returned to the parent's physical custody within the extended time period or reasonable services have not been provided to the parent." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 59, fn. omitted.)

"'If a dependent child was returned to the custody of a parent or guardian at the 12-month review or the 18-month review or at an interim review between 12 and 18 months and a [section] 387 petition is sustained and the child removed once again, the court must set a hearing under section 366.26 unless the court finds there is a substantial probability of return within the next 6 months or, if more than 12 months had expired at the time of the prior return, within whatever time remains before the expiration of the maximum 18-month period.'" (*In re G.W.* (2009) 173 Cal.App.4th 1428, 1438.)

Here, as of March 18, 2016, the day that the court sustained the section 387 petition and removed the child from father's custody, there were still approximately four

20

months remaining before the expiration of the maximum 18-month period. Father argues that the court should have granted him additional reunification services for that time period. He further claims that the court incorrectly stated that the issues regarding him were the same in the original petition and the supplemental petition. However, the court properly denied further services because there was no substantial probability the child would be returned to father's custody within four months. (§ 361.5, subd. (a)(3).) First, the court correctly noted that the section 387 petition was based on the same issues as the original petition—mother's substance abuse and father's ability to protect the child. The original section 300 petition alleged under section 300, subdivision (b), that father failed to protect the child adequately when he knew or reasonably should have known about mother's substance abuse and/or neglect of the child. Father submitted on the petition. The section 387 petition similarly alleged that father violated the court's orders by allowing mother to have unsupervised visits with the child, and that father had not been protective of the child, placing him at risk of physical and emotional harm. The evidence undisputedly showed that father knew mother was actively using drugs and that he left the child with her alone. Furthermore, father admitted to lying to the social worker about the child's whereabouts, when the child was with an unapproved person. He also admitted that he violated the court's orders not to leave the child with someone who had not been live scanned and not to leave him alone with mother. Significantly, when father was asked if he agreed that he had not been protective of the child when he left him with mother, knowing she was actively using drugs, father said, "No." As the social worker opined, providing father with additional reunification services, when he had already

21

completed his case plan, would not have done much to stop him from continuing to violate the court's orders. As the court stated, father's violations of the court's orders exposed the child to potential danger.

In light of the evidence, the court properly declined to order more services, since there was no substantial probability the child would be returned to father's custody within the next few months.

### III. The Court Properly Found That Reasonable Reunification Services Were Provided to Father

Father argues that there was no substantial evidence to support the court's finding that reasonable reunification services were provided. He claims that the social worker made no effort at reunification and that he was not provided with any services. We disagree.

The record belies father's claim. At the jurisdiction/disposition hearing on February 24, 2015, the court ordered reunification services for father and ordered him to participate. We note that the social worker originally recommended that father undergo counseling and participate in a parenting education program. However, at the hearing, father asked the court to strike the parenting component, asserting that he did not need it since he had raised two grown children. Thus, the court modified the case plan accordingly. In the six-month status review report, the social worker stated that father was participating in services. At the six-month review hearing, father informed the court that he had completed his counseling requirement. Father's counsel also informed the court that he had been provided with visitation. To the extent father is arguing that he

was not provided with reasonable services after the child was removed from him pursuant to the section 387 petition, we conclude that the court properly declined to order additional services.  (See *ante*, § II.)  Thus, father's claim fails.

DISPOSITION

The writ petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST _____
J.

We concur:

RAMIREZ _____
             P. J.

SLOUGH _____
             J.