Filed 9/4/20  In re K.M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.M. et al., Persons Coming Under the Juvenile Court Law. | B302421 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>TIFFANY M.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 19LJJP00310A, 19LJJP00310B) |

        APPEAL from orders of the Superior Court of Los Angeles County, Steven E. Ipson, Judge Pro Tempore.  Affirmed.

        Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

This is the second appeal brought by T.M. (mother) in the dependency of her two daughters (ages 10 and 7).  Mother's earlier appeal challenged the orders taking jurisdiction over the children and for formal rather than informal supervision by the Department of Children and Family Services (DCFS).  While the first appeal was pending, the juvenile court sustained a supplemental petition (Welf. & Inst. Code,[1] § 387) and removed the children from mother's custody (§ 361, subd. (c)).  This appeal challenges these new orders.  We affirm.

## BACKGROUND

I.     The family[2]

The family's home was filthy, smelled foul, and was infested with cockroaches falling from the walls and into the children's food as they ate.  Mother, who suffered from multiple sclerosis, and maternal grandmother who was obese, were both bedridden, leaving the children unsupervised.  Soon, mother decided to educate the girls at home, further reducing their supervision.  Older daughter changed grandmother's diaper at least three times a day and regularly administered medication to both women.  A plastic tub full of those drugs sat at the foot of

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] On the court's own motion, we take judicial notice of the record in case No. B299417, the earlier appeal in this case.

2

grandmother's bed next to her oxygen tanks so that older daughter could reach them. Mother rejected the social worker's repeated instructions to keep medication out of the children's reach and to cease having a child administer drugs.

DCFS filed an original petition and a first amended petition alleging that the home was filthy and mother had limited ability to appropriately care for and supervise the girls, that older daughter administered prescription medication daily to mother and grandmother, and that mother had a history of substance abuse in combination with her prescription medication, and suffered a DUI conviction.

Mother testified at the jurisdiction hearing that three nurses came to the apartment sporadically during the week. She claimed that aunt and great aunt came daily to clean, and that she hired a professional cleaning agency to clean twice a month. Mother also testified that aunt and great aunt helped her out daily with cooking and cleaning. In advance of the disposition hearing, a social worker found the children's room to be cleaner and less cluttered than before but needed more work. Mother explained that cleaning was ongoing.

The juvenile court sustained the count alleging older daughter's daily administration of prescription medication. The court ordered the children to remain in mother's custody and ordered mother to participate in services. Mother appealed.

II. The supplemental petition

Shortly before mother filed her first appeal, DCFS generated an emergency response on July 19, 2019. During an unannounced visit to the family's apartment, older daughter declared that she felt unsafe at home because, a few days earlier, mother threw a knife at her that struck the child's foot where the

3

social worker observed a two-centimeter cut. Additionally, older daughter accused her sister of pouring poison on her toast and stabbing her in the leg with a knife. The social worker saw three linear cuts on older daughter's leg. Younger daughter admitted only that she and her sister were trying to stab each other. Mother also threw a cell phone at younger daughter, hitting her in the back. Mother and grandmother were the only adults in the home but were bedridden and did nothing about the children's behavior. Mother denied throwing a knife at older daughter, denied hitting younger daughter with the cell phone that she admitted throwing, and minimized the poisoning incident by pointing out that no one actually ate the poisoned toast.

An acquaintance of mother reported that the children were unsupervised because mother was bedridden and relied on older daughter to care for her, including assisting mother in the bathroom. The children had not bathed in months and they hoarded food, which attracted cockroaches. The girls fought constantly and ignored mother because she could not get out of bed. Younger daughter would wipe her feces with dirty clothing, which she then threw back on the floor. The nurses, who mother claimed came to the house, helped grandmother only.

In July 2019, the social workers found the apartment's condition to be "improving" in that the bathtub was clean and the beds had clean linens. However, the caretaker who had been helping clean the apartment and feed the children reported she had stopped working for the family. DCFS concluded that the children were no longer safe in mother's care and were at high risk of future harm. Mother agreed to a safety plan under which aunt would take the girls temporarily.

III.    The detention

DCFS removed the girls from mother's care and filed the challenged supplemental petition. (§ 387.) It alleged that mother's medical condition and inability to care for herself rendered her unable to care for and supervise the children (count s-1), younger daughter stabbed her sister with a knife and attempted to poison her sister (count s-2), mother endangered the children by throwing a knife at older daughter (count s-3), and by throwing a cell phone at younger daughter (count s-4).

At the detention hearing, mother challenged the removal of younger daughter only, arguing that she should be returned to mother so mother could make an appropriate plan for the child's safety by returning her to aunt. Acknowledging her medical condition prevented her from being completely mobile, mother explained that an upstairs neighbor came daily to help out with chores. The juvenile court detained the girls from mother's custody and awarded mother monitored visits.

IV.    Jurisdiction on the supplemental petition

For the jurisdiction report, older daughter stated she was very happy living with aunt and attending school. She was glad she was no longer responsible to care for mother and grandmother. Older daughter minimized the severity of the allegations about her sister's knifing and poisoning incidents. She stated that her sister did not try to harm her with a knife; they were just playing. She claimed mother accidentally threw the knife at her while she was cutting onions, and that mother only "softly" threw the cell phone at younger daughter's back.

Younger daughter felt safe and happy at aunt's clean house where she was learning to tidy up after herself. She had started

school and had made a lot of friends.  She denied trying to kill her sister, explaining that the two were trying to cut each other.  She denied mother threw a knife at older daughter, explaining that mother only "dropped the knife."  She confirmed, however, that mother threw a cell phone, but it only "softly" hit her in the back.

After the children's removal, mother went into the hospital for a month followed by two weeks in a rehabilitation center.  She was diagnosed with multiple sclerosis relapsing and remitting, that gave her headaches and vision problems.  She also fell often.

Aunt explained in September 2019 that mother had been unable to care for herself, let alone the children.  Mother had been prescribed the wrong medication that made her symptoms worse.  Once the children were removed, mother obtained medical care and new medication.

Mother's attorney requested that DCFS evaluate a safety plan for younger daughter.  DCFS interviewed mother who stated she intended to attend family counseling and have older daughter go into individual therapy.  She also planned to arrange family outings and activities to help the girls feel comfortable with each other and to understand what mother is suffering.  She had two in-home care providers, maternal aunt and Juanita C., to assist her in supervising the children mornings and evenings.  Mother planned to enroll the children in an afterschool program so that she would have time to prepare family meals.  However, DCFS recommended that mother participate in family reunification services.

At the jurisdiction hearing in mid-November 2019, mother testified that she was paralyzed at the time the children were removed from her custody.  Since then, during her two-month

hospitalization, she was prescribed new medication to prevent relapses. Mother acknowledged that her multiple sclerosis could relapse while the children were in her care, but she had been guaranteed that if she stayed on her new medication, relapses would last no longer than four days. Aunt or great aunt would care for the girls if mother had to return to the hospital. Unlike earlier, mother was no longer bedridden and could cook and clean. Still, a caregiver comes daily to help with those chores, to bring mother her medication, and to help run errands. The caregivers would also help take care of the children. Mother claimed to have kept her home clean since the case began. She also removed the knives from the apartment, although she denied throwing anything at older daughter and said she threw the cell phone onto the floor, not at younger daughter.

The court found that the previous disposition had not been effective and sustained counts s-1 and s-2. It next found that a substantial danger to the children existed if they were returned to mother and there were no reasonable means to protect them without removal. DCFS had made reasonable efforts to provide services. The court awarded mother monitored visitation.

## DISCUSSION

I.     Applicable law

"A section 387 supplemental petition, like the ones filed here, is used to change the placement of a dependent child from the physical custody of a parent to a more restrictive level of court-ordered care. (§ 387; [citation].)" (*In re D.D.* (2019) 32 Cal.App.5th 985, 989.) "In the jurisdictional phase of a section 387 proceeding, the court determines whether the factual allegations of the supplemental petition are true and whether the

7

previous disposition has been ineffective in protecting the child[ren].  [Citations.]  If the court finds the allegations are true, it conducts a dispositional hearing to determine whether removing custody is appropriate.  [Citations.]  A section 387 petition need not allege any new jurisdictional facts, or urge different or additional grounds for dependency because a basis for juvenile court jurisdiction already exists.  [Citations.]  The only fact necessary to modify a previous placement is that the previous disposition has not been effective in protecting the child[ren].”  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.)

“A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor[s] and (2) potential detriment to the minor[s] if [they] remain[ ] with the parent.”  (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

We “review the court’s jurisdictional and dispositional findings for substantial evidence.  [Citations.] . . . [W]e draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court’s order and affirm the order even if other evidence supports a contrary finding.  [Citations.]  The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order.” (*In re T.W.*, *supra*, 214 Cal.App.4th at pp. 1161–1162.)

II.     The juvenile court did not err in sustaining the supplemental petition and removing the children.

The evidence supports the juvenile court’s finding that the factual allegations of the supplemental petition were true and that the previous disposition was ineffective in protecting the children.  Under the original arrangement, the girls could remain in the home with DCFS supervision.  However, it became clear to DCFS that the home was chaotic, and the children were not safe.

The girls were trying to cut each other with knives, and one tried to poison the other. They did not respond to mother's attempts at supervision. Thus, apparently out of frustration, mother threw a cell phone at a child.

Mother contends that the family's circumstances did not warrant the drastic intervention of removal because she had responded to the social workers' concerns. She was hospitalized and her medication was adjusted so that she was stronger, more alert, and no longer bedridden. She and her caregivers were addressing the cleanliness and infestation problems, and great aunt would help mother cook and clean. Mother cannot be heard to challenge removal of older daughter because she effectively agreed to it by arguing against detention of younger daughter only.

Mother is commended for addressing her medical issues by seeking medical help. But she claimed she was addressing the filth and the lack of supervision for the children at the time the original petition was adjudicated, and failed to follow through. Mother stated that aunt and great aunt helped her out daily with cooking and cleaning, and that three nurses came sporadically during the week. Yet, after the disposition hearing on the original and first amended petitions, older daughter disclosed that *mother and maternal grandmother were the only adults in the apartment, and they were both bedridden.* Aunt stated she *only occasionally helped out.* Meanwhile, the unsupervised children were attacking each other with knives and poison.

Mother claims that removal was unnecessary also because she devised a safety plan under which aunt would care for the girls. Mother intended to pursue services and counseling for older daughter, and planned to put the girls in afterschool

9

program.  With respect to placing the girls with aunt, the record shows that she agreed to it *after* DCFS placed them with aunt.  As for the safety plan, DCFS did not devise it.  Rather, at mother's request, the agency interviewed her about her proposal.  Nothing in the record suggests that DCFS thereafter approved mother's proposed safety plan.  Rather, DCFS had already determined, and the juvenile court agreed, that the children were not safe in mother's custody as mother was unable to provide proper care for them and they were at high risk of harming or killing each other.  (See *In re T.W.*, *supra*, 214 Cal.App.4th at p. 1163.)

Mother blames DCFS for failing to provide her with reasonable services as originally ordered.  However, the record shows that DCFS provided mother with referrals to programs and regularly visited the family.  DCFS told the juvenile court that it provided referrals as soon as the court signed the disposition order.  However, the children were detained within a month of the disposition order, before the programs began.  This is not a failure to provide services.

Finally, mother's contention is wrong that DCFS improperly shifted the burden to her to independently verify that she was in remission and what her new abilities were.  The burden was always on DCFS to prove the factual elements of section 387 by substantial evidence.  (See *In re A.O.* (2010) 185 Cal.App.4th 103, 109–110.)  As explained, DCFS carried its burden.  To counter the showing made by DCFS, mother testified she was in remission and able to cook, clean, and care for the children.  However, the juvenile court disbelieved her, stating it believed instead that mother continued "to have limited ability," and otherwise noted mother's failure to provide evidence of her

remission and of her abilities.  It is the responsibility of the juvenile court to pass on the credibility of witnesses (*In re T.W.*, *supra*, 214 Cal.App.4th at p. 1161), and in view of the number of false stories mother gave throughout this case about who was helping her clean the house and care for the children, the court reasonably concluded mother was not entirely forthcoming about her abilities at the time of the disposition hearing on the supplemental petition.  DCFS's argument on appeal that there was no "independent verification" is an accurate statement of the record.  But, the burden was never improperly shifted to mother.

## DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:


EDMON, P. J.


LAVIN, J.